ALBERT L. WARD *vs.* SAMUEL HACKETT and others.

January 10, 1883.

**Surety — Liability on Note Delivered by Principal in Violation of Agreement.**—If a surety signs and delivers to his principal a negotiable promissory note, under a condition that it shall not be delivered to the payee until another person shall also sign it as co-surety, and the principal delivers it to the payee without complying with the condition, and the payee takes it without any notice of such condition and for a valuable consideration, the surety will be liable on the note, and cannot avail himself of such condition. Having placed the instrument, perfect upon its face, in the hands of the proper person to pass it to the payee, the *apparent* authority with which he has clothed the principal must be regarded as the *real* authority.

**Same—Liability on Note Altered by Adding Co-surety.**—If one signs such note as surety and intrusts it to his principal, and the principal, *before* delivery of the note to the payee, without the knowledge or consent of the surety, obtains the signature of another person as co-surety, this will not amount to an alteration of the instrument that will discharge the first surety; at least, where the payee had no notice when he took the note of the circumstances under which the additional signature was obtained.

**New Trial—Newly-discovered Evidence.**—Motion for a new trial on the ground of newly-discovered evidence *held* to have been properly denied in this case.

Appeal by defendants Elwis and Rice from an order of the district court for Martin county, *Dickinson*, J., presiding, refusing a new trial, after a verdict for plaintiff.

The action was on a promissory note as follows:

"FAIRMONT, Minn., May 9, 1879.

"Four months after date I promise to pay to the order of Albert "L. Ward $1099.19, at Martin County Bank, Fairmont, with in-"terest," etc.

(Signed)            "SAMUEL HACKETT.
                "FRANK ELWIS.
                "D. B. RICE.
                "C. H. BULLARD."

It was agreed that, as between the defendants, Hackett was the principal debtor, and the others were sureties for him, and plaintiff knew this when he took the note.    The other material facts are stated in the opinion.

*Andrew C. Dunn,* for appellants, cited 2 Daniel on Neg. Inst. 384, 399; 2 Parsons on Notes and Bills, 550–562; 6 Wait's Act. & Def. 486; *Greenfield Savings Bank* v. *Stowell,* 123 Mass. 196; *Draper* v. *Wood,* 112 Mass. 315; *Wood* v. *Steele,* 6 Wall. 80; *Fay* v. *Smith,* 1 Allen, 477; *Goodman* v. *Eastman,* 4 N. H. 455; *Blakey* v. *Johnson,* 13 Bush, (Ky.) 197; *Bank of United States* v. *Russel,* 3 Yeates, 391; *Aldrich* v. *Smith,* 37 Mich. 468; *Savings Bank* v. *Shaffer,* 9 Neb. 1; *Britton* v. *Dierker,* 46 Mo. 591; *Heffner* v. *Wenrich,* 32 Pa. St. 423; *Waterman* v. *Vose,* 43 Me. 504; *Lisle* v. *Rogers,* 18 B. Mon. (Ky.) 528; *McGrath* v. *Clark,* 56 N. Y. 34; *Worrall* v. *Gheen,* 39 Pa. St. 388; *Holmes* v. *Trumper,* 22 Mich. 427; *O'Neale* v. *Long,* 4 Cranch, 60; *McCramer* v. *Thompson,* 21 Iowa, 244; *Angle* v. *N. W. Mut. Life Ins. Co.* 92 U. S. 330; *Haskell* v. *Champion,* 30 Mo. 136; *Hamilton* v. *Hooper,* 46 Iowa, 515; *Dickerman* v. *Miner,* 43 Iowa, 508; *Crockett* v. *Thomason,* 5 Sneed, (Tenn.) 341; *Ivory* v. *Michael,* 33 Mo. 398; *Goodspeed* v. *Cutler,* 75 Ill. 534; *Schnewind* v. *Hacket,* 54 Ind. 248; *Wallace* v. *Jewell,* 21 Ohio St. 163; *Hall* v. *McHenry,* 19 Iowa, 521; *Lunt* v. *Silver,* 5 Mo. App. 186; *Gardner* v. *Walsh,* 5 El. & Bl. 83.

*Blaisdell & Higgins* and *Warner & Stevens,* for respondent.

MITCHELL, J.[*]   Defendant Elwis signed a negotiable promissory note as surety for defendant Hackett, and delivered it to Hackett, upon condition that he should not deliver it to plaintiff, the payee, until he procured the signature of one Johnson as co-surety.   Hackett failed to get Johnson's signature, but, without the knowledge or consent of Elwis, got defendant Rice to sign it, and then delivered it to plaintiff, who took it in the ordinary course of business for a valuable consideration, without any notice of the facts hereinbefore stated and now set up by way of defence.   Elwis now claims that he is not liable—*First,* because the note was delivered without Johnson's signature, contrary to the condition upon which he signed it and left

[*]Gilfillan, C. J., because of illness, and Dickinson, J., having tried the action in the court below, took no part in this case.

it with Hackett; *second,* that the addition of the name of Rice to the note, without his knowledge or consent, amounted to a material alteration of the instrument, which discharged him. These two questions we will consider in the order named.

1. The form of the note, when Elwis signed it and gave it to Hackett, was such that it was apparently complete. There was nothing on the face of the paper indicating that any other co-surety was expected to become a party to the instrument, and no fact was brought to the knowledge of the plaintiff, before he accepted the note, calculated to put him on his guard, or which should have induced inquiry. Elwis by his acts clothed Hackett with apparent authority to launch the note as it then was. The surety having thus placed the instrument, perfect on its face, in the hands of the proper person to pass it to the payee, the law justly holds that, as against the payee who takes it in good faith, for value, without any notice of this condition, the apparent authority with which the surety has clothed his principal shall be regarded as the real authority, and in such case the condition shall not avail the surety. This is too well settled to require discussion. Brandt on Suretyship, § 354, and cases cited.

2. The second point is more important. It has been very fully and ably argued by appellant, but, unfortunately for us, the respondent has not deemed it necessary to discuss the question at any considerable length. The position of appellant is that the fact of Hackett's obtaining the name of another surety upon the note, without his knowledge or consent, although done before the note was delivered to plaintiff, amounted to a material alteration of the instrument, which discharged him, even although plaintiff had no notice of the facts when he took the note. If this be the law, we are satisfied its announcement would be a surprise to the business and commercial world. It would render commercial paper a very uncertain and unsafe subject with which to deal. But we have carefully examined all of the numerous cases cited by appellant, and do not find one that goes far enough to sustain him. Many of these cases hold that a material alteration of a note made by one of the promisors before its delivery, without the knowledge of the other promisor, makes the note void as against such other promisor, although the payee have

no notice of the alteration when he takes the note. Such is doubtless the law. But, upon examination, these will all be found to be cases where the body of the note or the contract itself was changed, as by alteration of the date, rate of interest, or amount of the note. And the reason given why, in such cases, the party is discharged, is the self-evident one that the contract is no longer the one he made. Numerous cases are also cited to the effect that the addition of a new party to a note, without the consent of the other parties, is a material alteration of the instrument. But these will be found to be cases where the new name was obtained after the note was fully issued and delivered to the payee, and at his instance or with his knowledge. We have been referred to no case, and have found none, going so far as to hold, where a surety signs a promissory note and intrusts it to his principal, and the principal, while the instrument is still inchoate and has not become effectual as a contract by delivery, procures an additional signer, that this would be a material alteration and release the first surety. Two of the cases cited might, at first sight, seem to favor such a doctrine, but, upon examination, will be found not to sustain it, even if the payee knew, when he took the note, the circumstances under which the additional signature was obtained.

The case of *Haskell* v. *Champion,* 30 Mo. 136, was one where, at the instance of the payee, the names of new principal obligors were substituted in place of the original one, by changing the individual signature of one partner into the firm signature, thus attempting to make a party surety for persons for whom he had never agreed to be responsible.

The case of *Hall* v. *McHenry*, 19 Iowa, 521, contains *dicta* by some of the judges which go farther than any decision we have found. In that case the name of the additional surety was obtained before delivery of the note, but at the instance and for the benefit of the payee. After the note was delivered, the payee cut off the name of this additional surety, without the knowledge or consent of the first surety. *Wright*, J., who delivered the opinion of the court, while admitting that he had found no authority to that effect, argues that thus adding a new surety, even before delivery of the note, would amount to a material alteration of the instrument, which would discharge the

original surety, *provided the payee knew, when he took the note, of the circumstances under which the additional name was added.* He then states that the court was not agreed on this proposition, and then proceeds to decide the case upon another point, to wit, that cutting the additional name off the note was a material alteration, which discharged the original surety.

The rule that a material alteration of a contract avoids it had its origin largely in the necessity of preserving and protecting the integrity and sanctity of contracts. Properly applied, the rule is a salutary one. But the general sentiment of courts now is that the doctrine had been extended quite far enough, and that formerly, especially in England, it had been carried too far, and applied to cases not within the mischief intended to be prevented. Therefore, the tendency now is, if not to restrict, at least not to extend it beyond what has been already decided. To hold that the obtaining of an additional surety to a note, under the facts of the case at bar, amounted to an alteration of the instrument that would discharge Elwis, would in our judgment be harsh, technical, and work injustice, and establish a doctrine contrary to the general understanding of business men, which ought to be the law of such cases, and is the only just basis of the implied contract resulting from the facts. In dealing with commercial paper, complete on its face, and signed by several parties, we apprehend it never occurs to a business man that it is incumbent upon him to inquire of each maker whether he understood when he signed the paper just what other parties were to sign with him, or whether any additional names have been subsequently added without his knowledge or consent. To require any such thing would be inconvenient, without reason, and an innovation upon business usages. The idea that when a person signs a note as surety, and delivers it to his principal, no other surety is to be obtained, and, if the note cannot be negotiated in that form, it cannot be used at all, unless all parties consent to the introduction of a new surety, is, we apprehend, contrary to the general understanding of the commercial world.

It seems to us that, at least as against an innocent holder, the principal obligor, to whom the paper has been intrusted by the

surety, has implied authority to obtain additional sureties, until the note is launched into the market by delivery to the payee; and, as already remarked, this common understanding is the only just basis of an implied contract resulting from the facts. Courts have, in some cases, gone so far in holding that the addition of a new name to a note, under certain circumstances, amounted to a material and unauthorized alteration of the instrument, that it may be difficult to state the principle which distinguishes some of these cases from the present, nor do we feel compelled to attempt to do so. But whether or not the reason we have suggested be the correct one, we are satisfied that neither upon principle nor authority did the obtaining of Rice as additional surety amount, under the facts of this case, to an alteration of the instrument such as to release Elwis. *Keith* v. *Goodwin*, 31 Vt. 268. See, also, *Gardner* v. *Walsh*, 5 El. & Bl. 83; *Governor* v. *Lagow*, 43 Ill. 134; *Sampson* v. *Barnard*, 98 Mass. 359; *State* v. *Dunn*, 11 La. Ann. 549. As Rice's claim to be discharged is entirely predicated upon the assumption that Elwis was released, it is unnecessary to consider it further.

3. We think the motion for a new trial on the ground of newly-discovered evidence was properly denied. In addition to the defences already referred to, Elwis and Rice interposed the further defence that the note in suit was usurious. The newly-discovered evidence, so far as material under the issues in the pleadings, referred solely to this defence. It consists entirely of the evidence of the defendant Hackett, who was out of the state at the time of the trial, and a letter in his possession from plaintiff claimed to have reference to the note in suit. Hackett was really the only witness by whom defendants expected to prove the defence of usury. Having become a defaulter to the county, he had, in September, 1879, absconded from the state, and was still absent when this case was tried in April, 1880, although his family were still residing in Martin county, in this state. It may be conceded that Elwis and Rice did not know and had no means of knowing his whereabouts until after the trial of this action. They made no motion for a continuance. Their excuse is that they could not have sworn that they expected to be able to procure Hackett's evidence in case a continuance were granted. But it is undis-

puted that before the trial of the action plaintiff requested them to continue the case over until another term, suggesting that in the meantime Hackett might be found, and his evidence procured, but that they refused to do so and insisted on going to trial. Now they must have known that Hackett would be a material witness in the case, and they might naturally have anticipated that, inasmuch as his family still resided in the county, his whereabouts would quite possibly be disclosed as soon as his financial trouble had blown over. It was therefore, we think, their place to have consented to the continuance if they really desired Hackett's evidence. But, instead of adopting this course, they declined the proffered continuance, and elected to go to trial without any evidence to sustain this defence, doubtless relying upon their other defences, and quite possibly thinking that while Hackett's evidence might aid them on the defence of usury, yet it might not be advantageous upon the other issues. Having voluntarily elected to adopt this course, they have no right now to ask for a new trial.

Order affirmed.