FIRST NATIONAL BANK OF FREEPORT v. COMPO–BOARD MANU-FACTURING COMPANY and Others.[1]

June 7, 1895.

Nos. 9246—(111).

**Corporate Note—Denial of Execution.**

G. S. 1894, § 5751, applies to instruments purporting to be executed by a corporation as well as those executed by natural persons. Until the corporation has denied its execution under oath or affidavit, the instrument itself will be proof of the authority of the officers by whom it was executed in behalf of the corporation.

**Negotiable Instrument—Bona Fide Purchaser.**

The defendants indorsed a negotiable promissory note, with certain blanks to be filled up, and intrusted it to a third party to secure other indorsements, with instructions that the note was not to be negotiated until the other indorsements were secured, and until the maker gave collateral security to indemnify them as indorsers. The party to whom the note was intrusted, in violation of his instructions, filled up the blanks, and negotiated the note, without the performance of the conditions referred to. The note, complete and perfect on its face, passed into the hands of an indorsee in the ordinary course of business for full value, before maturity, without notice of the limitations of authority to the person to whom defendants intrusted it, or that the note was not a completed instrument when it left their hands. *Held*, that defendants were liable on the note, and that, as against such indorsee, they were estopped to urge an actual defect in the paper when, through their own acts, it was ostensibly perfect.

Action in the district court for Hennepin county by First National Bank of Freeport, Illinois, against Compo-Board Manufacturing

[1] Reported in 63 N. W. 731.

Company, Northwestern Guaranty Loan Company, J. H. Randall, E. J. McMahon, A. Z. Levering, W. S. Streeter and George B. Bower. The case was tried before Baxter. J., who directed a verdict in favor of plaintiff.    From a judgment for $2,150.27 entered in pursuance of the verdict, defendants Randall, McMahon, Levering and Bower appealed.    Affirmed.

*F. A. Gilman*, for appellants.

*Fred B. Dodge*, for respondent.

MITCHELL, J.    This was an action against the defendant company as maker, and the other defendants as guarantors of payment, of a negotiable promissory note, payable to the order of Northwestern Guaranty Loan Company, and by it alleged to have been indorsed and transferred for value before maturity to the plaintiff. The note purports on its face to be a perfect and complete instrument, and the evidence is plenary and uncontradicted that the plaintiff purchased it in its present form in the ordinary course of business, before maturity, for its face value, less 8 per cent. discount from the date of purchase to the date of maturity, without any notice of any fact or circumstance tending in any way to discredit it.

1. The point is made that the court erred in admitting the note in evidence, in the absence of any proof that the parties by whom it purported to have been executed in behalf of the maker corporation had any authority to do so.    There are at least three reasons why this was not error, or at least not prejudicial error:  First. Its execution was not denied by the company, which failed to answer.    In First N. Bank v. Loyhed, 28 Minn. 396, 10 N. W. 421, and National Bank of Battle Creek v. Mallan, 37 Minn. 404, 34 N. W. 901, we held that the first clause of G. S. 1894, § 5751, applied to indorsements purporting to be made by corporations as well as those made by natural persons.    And there is precisely the same reason for holding that the second clause of the section applies to instruments purporting to be executed by corporations.    Second. It does not lie in the mouths of the defendants who have guarantied the payment of the note to deny its execution by the party by whom it purports to have been executed.    Third. The defendants themselves supplied the proof, if any was needed, by showing the official character of those by whom the note was executed in behalf of the corporation,

and that when it was negotiated the corporation received and used the proceeds.

2. The substance of the defense to the note, as disclosed by the evidence, is that the defendant company was in urgent need of money; that in a conference of the appellants and several others, all of whom were interested in the company, they agreed to indorse a note of the company for several thousand dollars, which was to be negotiated for the purpose of raising the required funds; that each agreed to indorse only upon the conditions that all the others would do so, that the company would transfer certain stock to indemnify them for their indorsement, and that the note should not be negotiated until these conditions were performed; that with this understanding the appellants indorsed the note in question with certain blanks in it (as to what these blanks were they do not agree in their testimony); that there was also an understanding among them that when all the parties had signed it they were to meet and complete the note, and decide how it should be negotiated, although they generally admit that the talk was that one Streeter, who was connected with both the defendant company and the Northwestern Guaranty Loan Company, would negotiate it with the latter company; that the note was indorsed by some of the appellants, and then delivered to the treasurer of the defendant company to secure other signatures; that afterwards he turned it over to Streeter to secure still other signatures; that he secured some more signatures, but not all that it was agreed should sign it; and that without securing the remaining signatures, and without the transfer of the stock to secure the indorsers, the blanks were filled up, and the note negotiated, without the knowledge or consent of the appellants.

All of this, if true, would constitute no defense to the note in the hands of an innocent indorsee for value before maturity. It is at most the case where parties have intrusted to some other party their signatures on a negotiable promissory note, with certain blanks to be filled, with instructions not to negotiate it until certain conditions are performed, but the party filled up the blanks, and negotiated the note, complete on its face, in violation of his instructions. If there is anything settled in the law of commercial paper it is that under such circumstances the parties who signed are bound to pay the note to a bona fide indorsee for value without notice of the lim-

itation of authority to the person intrusted with the instrument. They themselves have created the agency or trust by means of which the fraud, if any, has been committed. It is the duty of the maker of negotiable paper to guard, not only himself, but also the public, against frauds of this kind. The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can judge of its character. A party who puts his paper in circulation invites the public to receive it of any one having it in his possession with apparent title, and he is estopped to urge an actual defect in the paper, when, through his own act, it ostensibly has none. See Daniel, Neg. Inst. §§ 843, 844, and cases cited; also Ward v. Hackett, 30 Minn. 150, 14 N. W. 578.

There was no error in the court's directing a verdict. There was not a scintilla of evidence to rebut or to cast a shadow of suspicion upon the testimony of the president of the plaintiff bank. On the contrary, it was corroborated by the fact that all the parties to the paper resided in Minneapolis, where all the negotiations among themselves were carried on, while the plaintiff is located in Freeport, Illinois, where its officers presumably reside, and where the note was purchased.

Judgment affirmed.