# NATIONAL CITY BANK OF MINNEAPOLIS v. ZIMMER VACUUM RENOVATOR COMPANY and Others.[1]

January 28, 1916.

Nos. 19,606, 19,607—(215, 216).

**Corporation — proof of execution of instrument.**

1. Section 8448, G. S. 1913, makes every written instrument purporting to have been executed by any person proof that it was so executed until such person denies its execution under oath. This statute applies to instruments purporting to have been executed by corporations, and such an instrument is *prima facie* evidence that it was legally executed by the corporation, until such execution is denied under oath by an officer or representative of the corporation who is shown to have sufficient knowledge of the facts to be able to state authoritatively that the corporation did not execute it.

**Same — denial of execution by stockholder insufficient.**

2. The only denial of the execution of the notes in controversy is made by a stockholder of the corporation who is not shown to possess any knowledge whatever concerning its business transactions. Such denial is insufficient to deprive the notes of the probative effect given them by the statute, and they are *prima facie* the valid obligations of the corporation.

**Corporation — signature to note.**

3. Signing the name of the corporation to a note was a sufficient execution thereof, and the note need not show upon its face by what official the name was affixed.

**Release of surety — collateral security.**

4. Where collateral given by one of several sureties to secure his personal obligations and also his obligation as surety is applied by the holder thereof upon such personal obligations, such application does not release other sureties from their contract.

**Guaranty — notice of acceptance.**

5. Where plaintiff promised to make a loan on receiving a certain guaranty of payment thereof and such guaranty was thereafter furnished,

[1] Reported in 156 N. W. 265.

plaintiff was not required to give notice to the guarantors of the accept-
ance of the guaranty before making the loan.

**Evidence admissible.**

6. The answer alleged that the loan in controversy was made to the
corporation for the personal use and benefit of certain officers of the
corporation who appropriated all the proceeds thereof to their personal
use, and that plaintiff made the loan with knowledge of such facts. *Held*
that the court erred in refusing to receive evidence to establish such
defense.

Action in the district court for Hennepin county against Zimmer
Vacuum Renovator Company, Asa Paine, W. A. Morey, A. A. Cirkler,
James R. Canterbury, George B. Esterman, G. A. Partin, C. Blomstrom
and John Hill to recover $2,500 upon a promissory note and a guaranty
thereof. The substance of the pleadings will be found in the opinion. The
case was tried before Molyneaux, J., who at the close of the testimony di-
rected a verdict in favor of plaintiff for the amount demanded. Defendant
company moved for judgment in its favor notwithstanding the verdict or
for a new trial. Defendants Partin, Blomstrom, Esterman, Cirkler and
Canterbury made like motions. From orders denying these motions de-
fendant company and defendants Partin, Blomstrom and Canterbury
appealed. Reversed.

*H. E. Fryberger,* for appellants.

*Selover, Schultz & Selover,* for respondent.

TAYLOR, C.

The Zimmer Vacuum Renovator Company was incorporated in 1908
for the purpose of manufacturing cleaning devices, and continued in
business until June, 1913, when it became insolvent and a receiver was
appointed to take charge of its affairs and apply its assets in payment of
its liabilities. Asa Paine and W. A. Morey appear to have been the officers
who conducted and managed the business of the company, and all the
books and papers of the company were in their possession. After the in-
solvency of the company, Paine and Morey disappeared and could not be
found, and the records, books and papers of the company likewise disap-
peared and could not be found. In consequence the receiver never ob-
tained the records, books and papers, and none of the parties who appeared

in this action were able to produce them at the trial. Outside the written instruments upon which this action is based, the information concerning the transactions of the company is meager; and is derived mainly from the testimony of stockholders and directors who apparently took very little part in its business, and had very little knowledge concerning its affairs and none at all concerning the entries contained in its books and records. In March, 1913, Morey, the secretary and manager of the company, called a meeting at the office of Paine, which was attended by three of the five directors and by several of the stockholders who were not directors. At this meeting, Paine and Morey stated that it was called to arrange for securing a line of credit for the company; that they had conferred with the plaintiff bank; that the bank would give the company a line of credit up to $5,000 on receiving a satisfactory guaranty; and they asked whether those present would execute such a guaranty. All present assented to the proposition, and agreed that Paine and Morey should prepare the guaranty, secure the signatures to it, and complete the proposed arrangement with the bank for loans to the company. The guaranty was drawn up, was signed by each of the individual defendants in the present action, and was delivered to and accepted by the bank. Thereafter, and on April 29, 1913, Paine and Morey presented to the bank a promissory note for $2,500 executed in the name of the company by Asa Paine, president, and W. A. Morey, secretary, and indorsed by Paine and Morey individually as sureties, and received the money thereon. When the note became due, Paine and Morey went to the bank and requested an extension which was granted. Thereupon the note was canceled and surrendered, and in lieu thereof they gave the bank a second note payable on demand for the same amount and bearing interest at the same rate and signed as follows:

Zimmer Vacuum Renovator Company.

Asa Paine.

W. A. Morey.

In its amended complaint, plaintiff alleged the making and nonpayment of the loan, and set out in full the two notes and the guaranty. Defendants Partin, Blomstrom and Canterbury, as stockholders, interposed an answer on behalf of the company in which they alleged that the officers of the company, Paine and Morey, had been absent for more than a year; that there was no board of directors competent to act; and that,

to protect the interests of the company and its stockholders, it was necessary for the stockholders to interpose an answer on·behalf of the company. Defendants Partin, Blomstrom, Canterbury, Esterman and Cirkler also interposed separate answers individually. At the close of the trial, the court directed a verdict in favor of plaintiff for the amount of the loan. The company made a motion for judgment notwithstanding the verdict or for a new trial and appealed from the order denying its motion. Defendants Partin, Blomstrom and Canterbury jointly made a similar motion and appealed from the order denying this motion. The other answering defendants did not appeal and are not before this court.

1. In their answers both the company and the individual defendants specifically denied that the company ever executed either of the notes in controversy, and alleged affirmatively that if the name of the company was subscribed to such notes such subscription was wholly without authority from the company. The answer of the company was verified by defendant Partin who states in the verification that he is one of the defendants; that he has read the answer; and, "that the facts therein set forth are true except as to those matters stated on information and belief and as to those matters, he believes it to be true."

Section 8448, General Statutes of 1913, provides that "every written instrument purporting to have been signed or executed by any person shall be proof that it was so signed or executed until such person shall deny the signature or execution of the same by his oath or affidavit." This statute applies to instruments, including promissory notes, purporting to have been executed by corporations, as well as to those purporting to have been executed by natural persons. Kelly v. Southern Amusement Co. 131 Minn. 386, 155 N. W. 214; La Plant v. Pratt-Ford Greenhouse Co. 102 Minn. 93, 112 N. W. 889; First Nat. Bank of Freeport v. Compo-Board Mnfg. Co. 61 Minn. 274, 63 N. W. 731. Where the instrument purports to have been executed by a natural person through an agent, or by a corporation through an officer thereof, the instrument is evidence of the authority of such agent or officer to so execute it. Bausman v. Credit Guarantee Co. 47 Minn. 377, 50 N. W. 496; Tarbox v. Gorman, 31 Minn. 62, 16 N. W. 466; First Nat. Bank of Freeport v. Compo-Board Mnfg. Co. 61 Minn. 274, 63 N. W. 731; Moore v. Holmes, 68 Minn. 108, 70 N. W. 872; McGinty v. St. Paul, M. & M. Ry. Co. 74 Minn. 259, 77

N. W. 141. Where the instrument purports to have been executed by a natural person, it is not divested of the probative force given it by the statute, until such person makes an oath or affidavit specifically and positively denying that he executed it. This oath or affidavit must be made by such person himself; if it be made by his agent or attorney, it does not affect the probative force of the instrument, except perhaps in those cases in which the instrument purports to have been executed for the principal by such agent or attorney. Johnston Harvester Co. v. Clark, 30 Minn. 308, 15 N. W. 252; Moore v. Holmes, 68 Minn. 108, 70 N. W. 872. Where the instrument purports to have been executed by a corporation, the oath or affidavit, of necessity, may be made by a proper officer or representative of such corporation. But the law contemplates that the denial shall be made by one who would have personal knowledge of the facts, if the instrument had been executed as an obligation of the corporation. In order to divest such instrument of its probative force, it must appear that the one making the oath or affidavit had the management and control of such matters on the part of the corporation at the time of the alleged transaction, or that he had such personal knowledge of the doings of the corporation at that time and in that respect that he would have known of the transaction if the instrument had been executed as the obligation of the corporation. In other words, the denial must be made by one who has the knowledge to enable him to state authoritatively whether the corporation did or did not execute the instrument. If an officer or representative making such denial be unable to negative the execution of the instrument completely, for the reason that other officers or representatives may have executed it without his knowledge, his oath or affidavit may doubtless be supplemented by the oath or affidavit of such other officers or representatives in order to make the denial complete.

In the present case, the answer of the company is verified by a stockholder. There is nothing in either the answer or the verification to show that this stockholder possessed any knowledge of the business affairs or transactions of the company during the time in question, or had any means of knowing whether the company had or had not authorized and executed the notes in controversy. While the sufficiency of the denial must be determined from the answer and verification, we may remark in passing that this stockholder was a witness at the trial, and that his testimony

fails to disclose any knowledge whatever on his part concerning the business transactions of the company. The answer and verification were not sufficient to divest the notes in controversy of the probative effect given them by the statute; and the introduction of the notes in evidence made a *prima facie* case for plaintiff against the company.

The statute establishes a rule of evidence merely, not a rule of pleading. McCormick Harvesting Machine Co. v. Doucette, 61 Minn. 40, 63 N. W. 95; Smith & Nixon Piano Co. v. Lydick, 110 Minn. 82, 124 N. W. 637. Under the rules of pleading, the fact as to whether the notes had been executed by the company was in issue. The statute made the notes themselves *prima facie* evidence that they had been duly executed by the company, and cast upon defendants the burden of proving affirmatively that the execution of the notes was unauthorized, and that they were not the notes of the company. Defendants tendered no such proof, and the notes must stand as the notes of the company. Kelly v. Southern Amusement Co. 131 Minn. 386, 155 N. W. 214.

2. The contention of defendant that the second note was not executed by the company, but only by Paine and Morey individually, cannot be sustained. This contention is based upon the fact that the note does not disclose upon its face by whom the name of the company was affixed thereto. It is not necessary for the note to show by whom the name of the company was affixed. Simply signing the name of the company without anything more was a sufficient execution on behalf of the company. First Nat. Bank of Rock Island v. Loyhed, 28 Minn. 396, 10 N. W. 421. In such cases the statute establishes *prima facie* that the name was signed by authority of the corporation. National Bank of Battle Creek v. Mallan, 37 Minn. 404, 34 N. W. 901. It follows that the claim that Paine and Morey substituted their individual note for the note of the company, and thereby released and discharged the company from further liability, is untenable.

3. Defendants contend that they were released and discharged by a settlement between plaintiff and Paine, whereby Paine's personal indebtedness to plaintiff was paid and satisfied. They claim that this settlement included Paine's liability upon the notes and guaranty in controversy. The only evidence bearing upon this question is the testimony of plaintiff's president, who stated that the liability of Paine upon the obligations

in controversy was expressly excepted from the settlement. It is therefore not necessary to consider to what extent, if at all, the release of Paine from his liability as surety upon the notes, and from his liability upon the guaranty—the guaranty being in legal effect joint and several—would affect the liability of the other guarantors.

4. At the time of procuring a personal loan from plaintiff, Paine gave plaintiff collateral security for his indebtedness. He executed a written agreement of pledge which was sufficiently broad to enable plaintiff to hold such collateral as security not only for his personal indebtedness but also as security for his liability upon the obligations in controversy. Paine's personal indebtedness largely exceeded the amount of this collateral and the proceeds thereof were applied upon such personal indebtedness. This application of such proceeds gives defendants no legal ground for complaint.

5. The guarantors claim that it was incumbent upon plaintiff to notify them of the acceptance of the guaranty before making a loan in reliance thereon. The facts shown in the record do not bring the case within the rule which they invoke. At the instance of the company, plaintiff had promised to make the loan on receiving the guaranty. When the guaranty was received and the loan made, the transaction was complete; and the making of the loan was a sufficient consideration to support the contract of guaranty.

6. The guarantors claim that the guaranty applied only to obligations upon which the company was the sole primary debtor; that Paine and Morey as well as the company were primarily liable upon the notes in controversy; and that these notes are not within the guaranty for that reason. While plaintiff had the right to hold Paine and Morey as co-makers of the notes, the fact, not seriously questioned, that as between them and the company they were sureties only, made the company the primary debtor so far as the guarantors are concerned.

7. The guarantors also claim that, by accepting the second note, plaintiff extended the time for payment of the debt and thereby released them from further liability. Even if a valid extension of the time for payment would release the guarantors, which we doubt, the second note being payable on demand did not create a valid extension of such time, and

there is no evidence which would warrant a finding that any valid contract had been made for such an extension.

8. While the answer is not as clear and specific as it might be, it alleged in substance that the notes were executed for the personal use and benefit of Paine and Morey; that the company received none of the proceeds thereof, but Paine and Morey received all of such proceeds, and that plaintiff had knowledge of such facts at the time of the transaction. If Paine or Morey procured the loan for the purpose of applying the proceeds thereof in payment of his personal debt to the bank, and, at the time of making the loan, the bank knew that fact, it is not entitled to recover in this action. First Nat. Bank of Rice Lake v. Flour City Trunk Co. 118 Minn. 151, 136 N. W. 563. The transaction in respect to the loan appears to have been conducted on the part of plaintiff by its president. In the cross-examination of this officer under the statute, defendants asked certain questions concerning transactions between the bank and Paine which were excluded, and then made the following offer: "We offer to prove by this witness that the proceeds of this loan made to Paine were used in paying the obligations of Paine to the bank at the time of the loan, were not devoted to the corporation at all, but were devoted to Mr. Paine's own personal use and benefit." This offer was objected to and excluded as not within the issues, but not as insufficient in substance. Defendants had previously stated in effect that the purpose of the line of questions which were excluded was to show that the proceeds of the loan to the company were for the use and benefit of Paine personally and that the bank knew it. We think that the allegations of the answer were sufficient to admit the defense sought to be proven; and in view of what had preceded, and of the fact that the witness was the officer who had acted for the bank in making the loan, and whose knowledge at that time and in respect to that matter would be the knowledge of the bank, the court should have received the proffered testimony. If defendants were able to prove that the loan was made for Paine's personal benefit, and that plaintiff made it knowing at the time of making it that the proceeds thereof were to be applied upon Paine's personal indebtedness, they were entitled to do so.

Order reversed.