# NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS v.
## W. E. FOSTER AND OTHERS.
## THOS. L. BROWN AND OTHERS, APPELLANTS.[1]

January 10, 1936.

No. 30,499.

*Best, Flanagan & Rogers* and *LeRoy Bowen,* for appellant O. H. Landin.

*John A. Burns* and *Robert F. Koch,* for appellants Thos. L. Brown, Maurice W. Stoffer, and J. A. Quint.

*Cobb, Hoke, Benson, Krause & Faegre, Paul J. McGough,* and *Loring M. Staples,* for respondent.

LORING, JUSTICE.

This is a suit upon a guaranty made by the defendants to secure the payment of loans made to the corporation of which they were directors. Plaintiff had a directed verdict as against their defense of conditional delivery, and they have appealed from an order denying their motions for judgment or a new trial.

In October, 1926, the five defendants together with Guy A. Thomas, I. C. Klepper, and one other met for the purpose of organizing a corporation to manufacture and sell a coal-saving device in which they were interested. The defendants, Klepper, and Thomas were to be directors in the new company, and Foster was to arrange for financial backing for it. Foster accordingly went to the plain-

[1]Reported in 264 N. W. 570.

tiff bank and there conferred with J. Cameron Thomson, an officer of that institution. He gave Thomson a list of the proposed directors of the proposed company and stated that the company would need money when organized. Thomson agreed that credit would be extended to the amount of $5,000 (later enlarged to $7,500) on condition that the directors sign an agreement guaranteeing payment of any loans made up to the amount of the guaranty. Later, upon authority from his colleagues, Foster advised Thomson that the proposed directors had authorized him to arrange for the loan. A guaranty agreement, drawn by the bank, copy of which appears in the margin,[2] was given to Foster, and he was to secure the signa-

---

[2]"General Form 2.

"In Consideration, That The Northwestern National Bank of Minneapolis, Minnesota, has heretofore and will hereafter, from time to time, as may be agreed upon by the parties, discount notes for and loan money to Coalsaver Appliance Company, a corporation doing business in Minneapolis, Minnesota, and will furnish said Company with such other bank accommodations as from time to time may be agreed upon by said Bank and said Company, we, the undersigned, in consideration of the premises, and of the sum of one dollar ($1.00) to me in hand paid by said Bank, the receipt whereof is hereby acknowledged do hereby guarantee to an amount not exceeding in the aggregate, at any one time, the sum of Seventy Five Hundred and 00-100 Dollars ($7,500.00), the payment at maturity, or at any time thereafter, of all notes, drafts, acceptances and endorsements heretofore or hereafter made by said Company, and delivered to and discounted or held by said Bank.

"This guaranty shall continue and be in force and be binding upon me until any and all indebtedness at any time outstanding or owing by the said Coalsaver Appliance Company to said The Northwestern National Bank is fully paid, and until the undersigned shall have requested, in writing, said Bank to surrender and cancel this Instrument.

"In Witness Whereof, I have hereunto set my hand this 4th day of November, 1926.

"W. E. FOSTER
"THOS. L. BROWN
"L. C. KLEPPER
"MAURICE W. STOFFER
"J. A. QUINT
"O. H. LANDIN

"In Presence Of:
"H. H. SIVRIGHT."

tures of the proposed directors. Foster signed the agreement and then took the instrument to defendant Brown, who before attaching his signature said that he was signing with the understanding that Foster procure the signatures of all the other proposed directors. Defendant Stoffer signed upon the condition that Foster would not "deliver it until my client, Guy Thomas, has signed it." Defendant Quint signed with the understanding that all the rest of the proposed directors were to sign. Defendant Landin when signing told Foster not to deliver it to the bank until he had Guy Thomas's signature. Thomas did not sign the agreement, and Foster, in December, 1926, took the instrument to the bank, where he informed an officer, a Mr. Sivright, that Thomas had not signed but would call at the bank and sign. Foster said that he thought that Sivright said in response he would "hold it." Neither Sivright nor any other officer of the bank was informed that any of the defendants had signed conditionally. Thomas never signed the agreement. However, upon the organization of the Coalsaver Appliance Company, the bank advanced to it the amount agreed upon with Foster ($7,500). As the notes of the company became due, Foster, as president of the company, and Brown, as treasurer, gave renewal notes. In 1929 the various notes of the company were consolidated into one note, and the company's bank account was discontinued. The company made some payments on the notes, but the bank demanded further payment, and the defendants, who were all directors, advanced money to the company for the purpose of reducing the note. Between 1931 and 1933 the bank asked that the company pay $100 per month on the note, and defendants at different times advanced various sums to the company to meet those payments and made some payments directly to the bank. In 1933 this action was commenced, with the result heretofore stated.

■ The first contention of the defendants is that the guaranty agreement was not absolute or unconditional but that it related only to loans which the guarantors should subsequently agree with the bank should be made, and that the word "parties" appearing therein refers to the bank and the guarantors, not the bank and corporation. With that construction we are not in accord. Ob-

viously to us the word "parties" refers to the corporation and the bank, and the guaranty was to cover a line of credit up to $7,500 as the same might be needed by the corporation. The construction contended for by the appellants would in effect require all of the guarantors to agree to every loan or renewal made to the company, and this is entirely inconsistent with the provision that the guaranty should continue until any and all indebtedness of the company to the bank should be fully paid. So construed the guaranty would be of little effect. Clearly it is unconditional.

The principal defense is that the guaranty was executed by the respective guarantors upon condition that Thomas should join in the guaranty before it should become effective by delivery to the bank. We do not regard this defense as available for the reason that the defendants never communicated to the bank the condition upon which they claim they signed the guaranty. There is no claim of any express language advising the plaintiff that the signatures were made upon any such condition, and we do not think that any justifiable inference can be drawn from the testimony to the effect that the bank should have known that the instrument was so signed. True, the bank asked for a guaranty by the directors which presumably would be by all of the directors, and it is true, too, that the guaranty was delivered to the bank with the promise that Thomas would come in and sign it thereafter; but from this no legitimate inference of conditional signing upon the part of the defendants can be drawn. If the bank considered itself safe with the six signatures instead of seven and chose to go on and advance money to the corporation on that security, it was not thereby deprived of relief against these defendants. Nothing appears to be better settled in the law than that any condition of the kind here claimed must be communicated to the obligee if it is to be effective as a defense. Bd. of Ed. v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374; Stearns, Suretyship (4 ed.) § 109; First Nat. Bank v. Compo-Board Mfg. Co. 61 Minn. 274, 63 N. W. 731.

The case being so clearly within the rule, we need not consider the question of waiver and estoppel by the subsequent conduct of

the defendants in causing the renewal of the note and making payments thereon.

The order appealed from is affirmed.

HOLT, JUSTICE, took no part in the consideration or decision of this case.