**MASTIN REALTY & MINING CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12299.

Circuit Court of Appeals, Eighth Circuit.

Oct. 26, 1942.

Floyd E. Jacobs, of Kansas City, Mo. (Scott R. Timmons, of Kansas City, Mo., on the brief), for petitioner.

Bernard Chertcoff, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals which denied claims of petitioner for credits for the years 1936 and 1937 against the surtax on its undistributed profits assessed under the provisions of the Revenue Act of 1936, c. 690, 26 U.S.C.A. Int.Rev.Acts, page 819 et seq.

The case was submitted to the Board of Tax Appeals on an agreed statement of facts which the Board adopted as its findings. Petitioner is a corporation with its principal place of business in Kansas City, Missouri. It filed its corporate income and excess profits tax returns for the calendar years 1936 and 1937 with the Collector of Internal Revenue for the Sixth Collection District of Missouri. On July 26, 1934, it borrowed $12,500 from Thomas H. Mastin, president of the company and one of its stockholders and directors, for financing the operations of the company. In December, 1935, being in need of further funds, Mastin wrote a letter addressed to the company and signed by him, as follows:

"In order to obviate the necessity of changing the mortgage obligations of the Mastin Realty & Mining Co., I shall lend this corporation sums in such amounts and at such times as are necessary to take care of going requirements, provided no dividends nor distributions to stockholders are declared or paid until my advances are repaid to me in full, and the next meeting of the corporation shall confirm this."

On the same date Mastin loaned the company an additional sum of $33,000 for financing its operations. None of the money had been paid on January 2, 1936, when the annual meeting of the Board of Directors occurred. At that meeting, Mastin, as a director of the company and as a creditor to the amount of $45,500, made the following motion:

"The liability of the company for money borrowed for current financing shall be discharged in full before the declaration of any dividend within each year."

The motion was unanimously adopted and the minutes of the meeting were signed by all of the directors. The sum of $20,000 was actually paid on the indebtedness in the year 1936, and no dividends were declared by the corporation. Sufficient money was not accumulated to pay the balance of this indebtedness until June 13, 1938, when $28,500 was paid. On January 7, 1937, the annual meeting of the Board of Directors was held and the Board passed a motion relative to the payment of dividends identical with that adopted at the

1936 annual meeting, and the minutes of the meeting were similar to the minutes of the January 2, 1936, meeting and were likewise signed by all the directors. No dividends were paid to the stockholders of the corporation until after the indebtedness above mentioned was paid in full.

The Commissioner redetermined a deficiency in income tax for the years 1936 and 1937 based on his finding that the credits claimed on account of an alleged contract restricting payments of dividends were not allowable because petitioner had not executed a contract restricting the payment of dividends within the meaning of Section 26(c)(1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836. The Board of Tax Appeals sustained the Commissioner's contention. On petition to review, the correctness of this contention is challenged, it being contended that the evidence discloses that a written contract was executed by petitioner prohibiting it from paying dividends.

Section 14 of the 1936 Act, 26 U.S.C.A. Int.Rev.Acts, page 823, imposed a general surtax on corporate profits earned but not distributed as dividends during the year. Section 26(c)(1) of the Act, allowing certain exemptions, reads as follows:

"(c) Contracts Restricting Payment of Dividends.

"(1) Prohibition on payment of dividends. An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

▉ Treasury Regulations 94, issued under the Revenue Act of 1936 provides that the credit authorized by the above quoted section is allowable only with respect to a written contract (1) executed by the corporation prior to May 1, 1936, which (2) expressly deals with the payment of dividends, and (3) operates as a legal restriction upon the corporation as to the amounts which it can distribute within the taxable year as dividends. Petitioner's claim is for a specially permitted deduction or exemption. Provisions granting such exemptions are to be strictly construed. Coca Cola Bottling Co. v. Commissioner, 8 Cir., 127 F.2d 430; Crane-Johnson Co. v. Commissioner, 8 Cir., 105

F.2d 740; Deputy, Adm'x, v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 111, 85 L.Ed. 29. Construing this exemption strictly, the Supreme Court has said, in Helvering v. Northwest Steel Rolling Mills, supra, that,

"The natural impression conveyed by the words 'written contract executed by the corporation' is that an explicit understanding has been reached, reduced to writing, signed and delivered. True, obligations not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which 'expressly deals with the payment of dividends.' "

▉ Petitioner contends that Mastin's letter of December 16, 1935, and the resolution of the Board of Directors of January 2, 1936, constituted a contract; that the letter was an offer, the resolution was an acceptance, and the requirements of a signed and delivered writing were complied with. The last money loaned to petitioner by its president was on December 26, 1935, prior to the adoption of the resolution, and hence, the loan could not have been made in reliance thereon. It is observed too that the resolution makes no reference to the letter, nor to any offer contained therein, nor does it indicate that it was adopted in response to the letter. As the letter is not incorporated by reference or otherwise, this resolution is the only writing which could be attributed to the corporation. So far as the minutes of petitioner are concerned, the provisions of the resolution were applicable to any creditor. The resolution declared that the liability of the company for borrowed money for current financing should be discharged in full before any dividends should be declared. Certainly, this does not purport on its face to be a specific formal contract between petitioner and its president. It was not signed by the corporation, nor does it purport to be signed by any officer on behalf of the corporation. It declared the purpose and policy of the corporation. Ordinarily, in executing a contract for a corporation, the agent or officer should, at the bottom of the contract, name the corporation as the contracting party and sign as

its agent or officer. Gottfried v. Miller, 104 U.S. 521, 26 L.Ed. 851. Likewise, a contract is "executed" by being signed and not by being adopted, and the signature is a part of its execution. National City Bank v. Zimmer Vacuum Renovator Co., 132 Minn. 211, 156 N.W. 265; First Natl. Bank v. Glenn, 10 Idaho, 224, 77 P. 623, 109 Am.St.Rep. 204.

■■ It is worthy of note that a formal resolution was also passed at the annual meeting of the Board of Directors in 1937. If, as contended by petitioner, the adoption of the resolution in 1936 amounted to an acceptance of an offer contained in Mastin's letter, and amounted to the execution of a contract prohibiting the payment of dividends, there was no necessity for again accepting it in 1937, and this further emphasizes the thought that the resolution simply declared the purpose of the corporation to pay no dividends until its indebtedness, whether due Mastin or some other person, had been paid. Confessedly, less formal methods of execution of a contract by a corporation may still be construed to be the contract of a corporation. We are here, however, considering a prohibition in the tax law authorizing specific exemption, and the question is whether the resolution adopted by petitioner may, in connection with the letter from its president, be considered a written contract executed by the corporation within the meaning of Section 26(c)(1) of the Revenue Act of 1936. Here a resolution adopted by petitioner's Board of Directors and made a part of its minutes is said to be a contract or part of a contract executed by the corporation. The minutes were signed at the end by all the directors. Nothing appears in the findings to sustain a conclusion that the minutes of the meeting of the Board of Directors' were intended to be other than a record of what transpired at their annual meeting. No one can determine by inspection that the minutes on their face purported to be a contract executed by the corporation. True, the minutes were signed by the directors, and this fact is urged as giving the minutes the characteristics of a contract. Minutes are ordinarily authenticated by the signature of the secretary and it is not necessary that any other officers sign them. Their character as minutes of the meeting of the Board was not changed by the fact that the members of the Board saw fit to sign them. We need not speculate why the minutes were so signed. They may have been so signed for various reasons, such as a desire of the secretary to have all agree on his report of the transactions, or one of the directors may have been absent from the meeting and the secretary might have wished to have all the directors on record as agreeing to the action taken, or a charter provision might have authorized the directors to act with unanimous consent without notice of meeting or even without a meeting. Fletcher, Cyclopedia of Corporations, Vol. 19, § 8954. But resolutions of directors alone are not contracts within this statute. The resolution here considered might have been sufficient authority for the officers of the company to enter into such a contract. In Metal Specialty Co. v. Commissioner of Internal Revenue, 6 Cir., 128 F.2d 259, the court said:

"We conclude that Section 26(c)(1) does not cover the case of a mere internal corporate agreement embodied in resolutions of directors, stockholders, and the charter of the corporation. While these have binding effect within the corporation itself, none of them constitute such a contract as is contemplated by the section involved herein within the limitations set by the Supreme Court."

See, also, Caroline Mills v. Commissioner of Internal Revenue, 5 Cir., 126 F.2d 857.

■ We think no more effect may be given to the signatures of the directors to the corporate minutes than that they were affixed for the purpose of authentication and approval. The fair mind approaching the signed minutes as revealed in the findings must at least doubt whether they were intended to operate as a formal contract between the corporation and Mastin, or were designed to do more than fulfil the ordinary function of corporate minutes, the preservation of the record of the directors' meeting. The matter being in doubt, the rule of construction requires that the decision must be against the allowance of the exemption. We need not consider whether Mastin could hold the corporation to a contract as evidenced by his letter and the resolution and acts under them because more than that is required here. A written contract specifically dealing with the payment of dividends must have been executed by the corporation.

The decision of the Board of Tax Appeals is therefore affirmed.

RIDDICK, Circuit Judge (dissenting).

I think the facts in this case establish the right of petitioner to the exemption claimed. The letter of the corporation's creditor, agreeing to lend the corporation funds needed to take care of going requirements on condition that no dividends should be declared or paid until the sums advanced by the creditor were repaid, and on the further condition that the minutes of the next meeting of the corporation should confirm acceptance by the corporation of the terms of the letter, followed by the required confirmation at the next meeting of the corporation and the spreading of the resolution to that effect, signed by all directors, upon the corporation's books, constitute a written contract within the terms of the pertinent section of the Revenue Act of 1936.

In dealing with this exemption, the Congress was convinced of the injustice of the undistributed profits tax, both to corporations and their creditors, in cases where, before the imposition of the tax, the creditor had advanced money to the corporation in reliance upon its contract not to pay dividends until its advances had been repaid. And while the Congress thought it wise, in the interest of certainty and in aid of an efficient administration of the law, and in guarding the public revenues from the possibility of fraud, to confine the permitted exemptions to cases of written contracts, executed by the corporation and expressly prohibiting the distribution of dividends, it was, nevertheless, primarily interested in the fact of the contract and not in its form. It certainly did not intend that the right to the exemption, based upon actions of the taxpayer taken before the tax was imposed and, therefore, not taken with intent to avoid the tax, should depend upon the precise observance of technical formalities. On the other hand, the Congress was satisfied to close the door against uncertainty in administration and on the possibility of fraud upon the public revenue by limiting the exemption to cases in which the fact of the required contract and its terms could be established with certainty by written evidence. A contrary conclusion seems to me to emphasize form at the expense of substance.

The rule requiring a strict construction of a grant of an exemption from taxation does not, in my opinion, compel a different conclusion. I think the decision of the Board of Tax Appeals should be reversed.