Doris Metcalfe and Freda Stroud, Appellees, v. First National Bank of Pittsfield, Appellant.

Gen. No. 9,278.

January term, 1941. Heard in this court at the Opinion filed November 3, 1941. Rehearing denied February 3, 1942.

BARRY MUMFORD, of Pittsfield, for appellant.

WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, and WILLIAMS & WILLIAMS, of Pittsfield, for appellees; PHILIP G. LISTEMAN, of East St. Louis, and WAYNE P. WILLIAMS, of Pittsfield, of counsel.

MR. PRESIDING JUSTICE HAYES delivered the opinion of the court.

John E. Woods died intestate in 1922, leaving surviving him, his widow, Amy Woods,—and Erbie M. Woods, Iva May McClintock and Howe C. Woods, his only children. He left an estate consisting of about twenty six thousand ($26,000) dollars.

Instead of probating his estate, his widow and children entered into an agreement on January 13, 1923, making disposition of the estate between them, by contract.

The contract provided in paragraph one, for the deposit of twelve thousand ($12,000) dollars, with the First National Bank of Pittsfield, Illinois, as trustee

for the widow, "the same to be in full of all claims of Special Award, inheritance, or other right or interest in said estate, . . ." and the same was thereby accepted by the widow as such. It was further provided that the said amount was to be held by the trustee during the life of the said widow, and the income paid to her annually, and that after the death of the widow, said funds were to be paid to the said Erbie M. Woods, Iva May McClintock, and Howe C. Woods, share and share alike.

Under paragraph two, the contract provided that the "trustee shall hold said principal sum intact, and only the income therefrom be paid to said Amy Woods; and at her death the remainder shall be paid to said children or their heirs, share and share alike."

Paragraph three provided that after the payment of all debts and the amount provided for said trust fund, the rest of said estate was to be equally divided among said three children, share and share alike.

The twelve thousand dollar fund was turned over to the appellant (First National Bank of Pittsfield) who paid the income to the widow until her death on October 14, 1938. On July 31, 1930, Erbie M. Woods, one of the children, died intestate, and was survived by Doris Metcalfe and Freda Stroud, appellees, his only children. His estate was probated in the county court of Pike county, Illinois. The estate was insolvent, and the administrator filed an inventory listing as an asset of said estate the undivided one-third interest in this fund of twelve thousand dollars, subject to the life estate of the mother. The administrator obtained an order from the county court for authority to sell the undivided interest in this fund, and sold the same to the appellant for the sum of twenty two hundred and fifty dollars ($2,250). No notice of this order or sale was given to the appellees.

The principal question in the case is the construction of the contract entered into between the widow and

children of John E. Wood, deceased, and this is based primarily on the intention of the parties,—which must be determined from the instrument itself.

In construing an instrument, all parts should be construed together to determine the true meaning. One clause of the instrument may be modified or limited by another clause. In arriving at the maker's intention, the court should consider every clause and give each word its ordinary meaning. No word should be rejected or changed, if by considering the entire instrument, all parts of it may be interpreted to create one consistent plan.

Upon examination of the contract it is obvious that under paragraph one, the twelve thousand dollars, subject to the life estate of the widow, was to go to the three children, but this was qualified by adding paragraph two, which restated that at the termination of the life estate, the remainder should go to the three children, and adds the significant language, "or their heirs."

Appellants contend the word "or" as used in this paragraph should be construed to mean "and," while appellees insist that it should have its ordinary meaning and be in the disjunctive. The case turns on what construction is given the word "or" placed as it is separating "children" from the words "their heirs."

In examining the circumstances surrounding the parties, at the time this contract was executed, it appears that the widow was entitled to a sum almost equal to the amount fixed by the contract for the trust fund. Under the inheritance laws of the State, she had one third of the personal property, and in addition her widow's award. This amount would have been her absolute property. Under the terms of the contract she had only the income, and the balance was divided among the three children, of which they immediately came into possession. They received about as much as they would have received, if the contract had not

been executed. Under the terms of the contract they would get, in addition, the principal of the trust fund, at the death of the widow.

The only advantage, appearing in the contract, which the widow received in lieu of surrendering the principal of her inheritance and taking a life estate, was her being able to direct that the beneficiaries receiving the remainder, be her children who survived her, or the heirs of those that were deceased.

Both sides have cited many authorities in reference to the construction of the language in paragraph two of this contract, but as our Supreme Court said in the case of *Straw v. Barnes*, 250 Ill. 481: "No two wills are precisely alike, and the conditions which surround one testator may differ so widely from those which surround another that the conclusion reached in one instance is of little value as a guide in another." In that case the testator had given two thousand dollars to his brothers and sisters or their heirs. The court refused to construe the word "or" to mean "and," and stated: "While the word *or* will sometimes be read as *and*, ordinarily it is used as a disjunctive rather than as a conjunction, and in this case the word should, we think, be given its ordinary meaning." By adopting this construction upon the words "my brothers and sisters or their heirs," the court stated: ". . . we are satisfied, when the whole will is considered in connection with the circumstances which surrounded the testator at the time he made the will, does justice to all parties in interest and fully effectuates the intention of the testator as expressed by his will."

In the case of *Bartlett v. Mutual Benefit Life Ins. Co.*, 358 Ill. 452, the court says: "It is contended that the word 'or' should be read as 'and.' Unless the context of the instrument shows that the testator clearly intended that the word 'or' should receive the meaning of 'and' it will be given its ordinary meaning. . . . The intention of the testator, when clearly expressed,

must be given effect in preference to any surmise that he did not mean what he said or intended what he said to mean something else.''

The court in passing on this same question in the case of *Ebey v. Adams*, 135 Ill. 80, stated: ''The words 'heir' or 'their heirs' are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person, or particular persons who may stand in that relation at the happening of a certain event or at a certain period, and not to the whole line of heirs in succession. No one can have heirs while living. The word 'or,' therefore, as here used, indicates substitution, and the payment or distribution is to be made at a fixed period,—*i. e.*, upon the sale by the executors after the termination of the intermediate estate. It would seem clear, therefore, that the persons who were to take are such of the children as might be living at the time of distribution, and the heirs of such as might have pre-deceased. It follows, when this language is considered in connection with the context, that there was here created an alternative devise. Such of the children as were living at the time of distribution would take, and such persons as would fall under the designation of 'heirs' of such as had pre-deceased would take the share or portion that their ancestor would have taken if living. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution,—in other words, time is of the substance of the gift, and related to the vesting of the legacies in interest as well as in possession.''

To construe ''or'' to mean ''and'' would be to nullify and cancel paragraph two of the contract. It is plain from the face of the contract that it was inserted by the parties with a definite purpose, namely, that the time of distribution should be at the termination of the life estate, and the distributees should be the

surviving children, or the heirs of predeceased children.

Contention is made by appellants that appellees should be barred by reason of laches and the statute of limitations, but appellees did not obtain their right of action until the termination of the life estate, and they acted expeditiously thereafter. Appellant further contends that appellees should be barred on the doctrine of estoppel, in that the interest had been sold under an order of the probate court. Under the construction given to this contract, the probate court had no jurisdiction of the subject matter, and its order in that regard was a nullity. While acting as trustee, appellant attempted to buy the corpus of the trust from itself.

For the reasons herein stated, the decree of the circuit court of Pike county is hereby affirmed.

*Decree affirmed.*