State Bank of Paw Paw et al., Plaintiffs, v. C. A. Boyle et al., Defendants.
Jean Elizabeth McBride French, Administrator of Estate of Lucy H. McBride, Deceased et al., Appellants, v. State Bank of Paw Paw, Appellee.

Gen. No. 10,341.

Opinion filed September 1, 1949. Released for publication September 21, 1949.

John W. Dubbs, of Mendota, for appellants.

Hibbs, Pool & Langer, of Ottawa, for appellee.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

The State Bank of Paw Paw, Illinois, was organized as a banking institution in 1884. In 1931, A. C. McBride, John Harper, John C. Larson, Eula Frantz, Frank Wheeler and A. D. Yenerich were the duly elected directors of said banking institution. The bank in 1931 was in financial difficulties, and the Auditor of Public Accounts notified the directors that $25,658.44 represented by various notes which were past due, should be removed from the notes receivable account, as being of doubtful value. Accordingly, a directors' meeting was held with all of the members present, and they agreed to take out the notes and substitute their personal notes for the amount of the doubtful assets. The notes representing the doubtful assets were turned over to one of the directors, Frank Wheeler, to collect what he could on the notes. He succeeded in collecting a little over $8,000.

At the time the auditor suggested that the directors substitute their personal notes and put them into the bank as assets, he informed the directors that the stockholders, at their next meeting, could pass a resolution to reimburse them for the money which they advanced to the bank.

At the next annual meeting of the stockholders, which was on July 5, 1932, the following resolution was unanimously adopted. ''Resolved that inasmuch as the Directors of the State Bank of Paw Paw, Ill., have, upon the advice of the Auditor of Public Accounts, and to keep the capital of said Bank from being impaired, purchased and paid for certain assets of said bank which said Auditor decreed to be of doubtful value, we the stockholders of said Bank do hereby authorize and direct that directors who have purchased said assets, be reimbursed for moneys spent in said transaction out of recoveries or earnings before any dividends are declared.''

At the meeting holders of 762 shares of the 1,000 shares outstanding were present in person, or by proxy and the resolution was unanimously adopted. Eighty-six of the votes represented shares held by the purchasing directors personally; 407 votes were cast by proxy given to the directors, and 269 votes represented shares held by twelve disinterested stockholders present at the meeting.

Litigation started on December 26, 1944, when the State Bank of Paw Paw, Illinois, filed with others a complaint in the circuit court in Lee county, for the sale of certain lands held by Frank Wheeler. In April 1945, Bayle Harper filed a counterclaim against the bank for reimbursement of losses sustained by John Harper, his father, as a purchasing director of the 1931 exchange of notes. The bank filed its answer to this counterclaim. On Jan. 4, 1947, the other directors who had signed notes in 1931 (and given to the bank in exchange of the doubtful paper,) filed their counter-

claim against the bank, demanding that they be reimbursed for the money which they had advanced in 1931, to save the bank from being liquidated. Bayle Harper dismissed his counterclaim and adopted the pleadings of the other counterclaimants.

Count I of the counterclaim alleges unjust enrichment and an implied contract for reimbursement based upon the bank's acceptance of the benefit of certain transactions between the bank and the purchasing directors. Count II alleges unjust enrichment of the bank and an implied contract based upon an intention of the parties to reduce the contract to writing. Count III alleges an express contract of reimbursement. Count IV alleges an express contract embodied in a resolution at an annual meeting of the stockholders of the bank held on July 5, 1932. Count V was dismissed. Count VI alleges an amendment of the by-laws by reason of the resolution passed at the stockholders' annual meeting. Count VII alleges an estoppel by virtue of a contract between the bank and the director, John C. Larson, by virtue of which said John C. Larson assigned all rights by virtue of the resolution at the annual meeting of the stockholders.

The bank filed its answer and admits most of the facts. The answers of the bank to the counterclaim of Bayle Harper set up the special defense of *res adjudicata* based upon a former suit of Bayle Harper as administrator of John Harper, deceased v. The State Bank of Paw Paw. A reply was filed to the answer of the bank as to the Bayle Harper claim. The pleadings are very voluminous, but the issue presented to this court for review is contained in the counterclaim and answer in reply as above stated.

The cause was referred to the master in chancery to report the evidence, and the conclusions of law relative to the same. He made his findings and report and recommended that the prayer of the petition of the counterclaimants be granted. The bank filed excep-

tions to the master's report, which were sustained by the court, and the counterclaim dismissed for want of equity, and judgment rendered against the counterclaimants. It is from this judgment that the counterclaimants have perfected an appeal to this court.

The appellee, bank, has filed a motion in this court that the judgment be affirmed as to Bayle Harper, as the record shows that he joined in the appeal, but is not now represented by an attorney in this court. Bayle Harper has made no reply to the motion, and we find that the judgment as to Bayle Harper should be affirmed. ·

As before stated, there is no question but that the directors in 1931, gave their personal notes to the bank to cover the face value of the amount of notes that were withdrawn from its assets, or that all of the notes have been collected in full, and the bank has had the benefit of this transaction since 1931. It also clearly appears from the record that the purpose of this transaction was to render the bank solvent and prevent the necessity of closing the bank, or assessing the stockholders, and that each and every one of the stockholders was benefited by the action of the board of directors in proportion to the amount of stock that each of them held in the bank. The master found, "that there has been no evidence or even a suggestion that the transaction was fraudulent, unfair or due to any improper motive; that the transaction was solely a benefit to the Bank and solely a detriment to the Directors excepting for such incidental benefit derived by the Directors as stockholders from the fact that no assessment would be necessary. That all of the directors advanced credit to the Bank by exchanging their personal notes for the unbankable notes with the intention of obtaining reimbursement from the Bank when, as, and if the Bank should be financially able to do so."

It is admitted that the bank, ever since the directors gave their notes for the poor assets, has been sound

financially, and for the past several years has been paying substantial dividends; that on the 30th day of September, A. D. 1946, the bank showed undivided profits in the sum of $35,434.52 and that the bank declared and paid a dividend to its stockholders in the year of 1944 and 1945.

In the case of *Harper v. State Bank of Paw Paw,* 300 Ill. App. 349, this court had before it some of the questions that are raised in this appeal, and we there held: ''The trial court found that the action of the deceased and the other directors in placing their notes in the bank as aforesaid was in order to remove objectionable paper of a like amount, and done at the instance of the auditor's office; that no evidence appeared to show or prove that the officers of the bank at the time, entered into any agreement with the deceased to reimburse him from the assets of the bank for any losses he might sustain by reason of the giving of his note. It appears that the deceased secured his advice from the bank examiner, who was no agent or officer of the bank, and could not act either for the stockholders or the board of directors.''

It is contended by the appellants that there was not a valid consideration for the giving of their notes to the bank. The same question was raised in *Central Republic Trust Co. v. Evans,* 378 Ill. 58. In that opinion we find the following: ''But aside from these reasons there was a valid consideration for the said note. The defendants, or some of them at least, were interested in the Madison Square State Bank. For reasons that seemed advisable, whether at the request of Banco, or based upon their own judgment, they determined to make the bank more liquid. This required taking out assets and putting in money. Appellants received the money from the National Bank of the Republic and paid it to Madison Square State Bank. It has been repeatedly held that notes signed

by stockholders to keep a bank going, or making a voluntary assessment, or to strengthen the credit of the corporation, or to preserve its solvency, rest on good consideration.'' (The court cited several earlier cases in the State of Illinois and many cases from other states to the same effect as supporting this proposition.)

██ ██ Our statute relative to banking corporations vests the affairs of management of the bank in a board of directors, and after the stockholders have elected a board of directors, they as stockholders or individuals, have no control over the affairs of a banking institution. It also requires that the board of directors keep a record of all their transactions and business affairs. (*Nelson v. John B. Colegrove & Co. State Bank,* 265 Ill. App. 488.) It is stated in *People ex rel. Greenwood v. Board of Supervisors of Madison County,* 125 Ill. 334: ''The principles announced seem to be well supported by authority. Where the law requires records to be kept, they are the only lawful evidence of the action to which they refer, and such record cannot be contradicted or supplemented by parol. The whole policy of the law would be defeated if they could rest partly in writing and partly in parol.'' To the same effect is the *Village of Bellwood v. Galt,* 321 Ill. 504.

In the present case there is no record whatsoever, that there was any promise by the bank to refund or pay to the appellants any money at any time in consideration for giving their notes and taking out the undesirable notes in the bank, nor is there any record or any oral or written promise by any one to reimburse them for what the directors did to save the credit of the bank.

██ ██ As before stated, the stockholders had no authority to pass a resolution authorizing the bank to refund to the appellants the money which they had

advanced. Under our statute a corporation can act only through its board of directors and officers. Its property is not subject to the control of its members or its stockholders. (*Bloom v. Nathan Vehon Co.*, 341 Ill. 200.)

██ Equitable principles cannot be applied to this case because of the auditor's advice or out of the kindness of the stockholders in passing a resolution that the directors be reimbursed for the money that they advanced to save the bank. Their actions were limited to those allowed by law. In *Knass v. Madison & Kedzie Bank*, 354 Ill. 554, 561, it is there stated: "The rule long recognized and frequently announced by this court is, that a bank incorporated under legislative charter, like other corporations so organized, has only such powers as are expressly conferred by the statute under which it is organized and such powers as are necessarily implied from the specific grant of power. Every power that is not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of the grant of power must operate against the corporation and in favor of the public. If a power claimed is withheld, the withholding of such power is to be regarded as a prohibition against its exercise."

██ It is a well known fact that in 1931 and 1932, hundreds of banks were in financial difficulty, and their directors were called upon to either pay cash or give bankable notes to the bank to save it from going into the hands of receivership. In most cases the bank issued debentures promising to repay them for the money that they advanced to save the bank, if, and when the bank became able to pay dividend. This was made a matter of record and was binding upon the bank to repay the directors for the money they had advanced. It seems too bad, under the circumstances in the present case, that the appellants were not properly advised of their legal rights, so they could have prop-

erly protected themselves, for the money that they had advanced.

It is our conclusion that the trial court properly held that the appellants were not entitled to recover, and the decree of that court is affirmed.

*Decree affirmed.*