Fred Kurth, Administrator of Estate of Collin L. Robertson, Deceased, Plaintiff-Appellee, v. Forreston State Bank, Defendant-Appellant. Consolidated with Appeal by said Forreston State Bank from the County Court of Ogle County to said Circuit Court Relating to the Authority of County Court to Reopen Estate of Collin L. Robertson, Deceased, and to Appoint said Kurth as Administrator de bonis non, Forreston State Bank, Appellant.

Gen. No. 10,635.

Opinion filed December 30, 1952. Released for publication January 16, 1953.

FRANKLIN J. STRANSKY, of Chicago, and MARTIN V. PETERMAN, of Oregon, for appellant.

BURRELL & HOLTAN, of Freeport, for appellee; DAVID M. BURRELL, of Freeport, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

In January, 1950, Fred Kurth, plaintiff-appellee as administrator with the will annexed *de bonis non* of the estate of Collin L. Robertson, deceased, filed his suit at law in the circuit court of Ogle county, Illinois, against the Forreston State Bank, defendant-appellant, asking judgment against the defendant for $31,387 and interest.

In October 1949 prior to the filing of this suit the county court of Ogle county, Illinois, on petition, had issued letters of administration *de bonis non* to the plaintiff herein. The executors of the estate of Collin L. Robertson, deceased, had been discharged several years before this time. The purpose of the appointment of the administrator was to bring this suit. The defendant appealed to the circuit court of Ogle county from the county court order appointing the administrator *de bonis non*. The suit for the recovery of the money and the probate appeal were consolidated by order of the circuit court.

Subsequent to the filing of the original complaint the plaintiff filed an amended complaint for the recovery of money alleged due him. To this amended complaint the defendant filed an answer with various exhibits attached, and various affirmative defenses. The trial court held in substance that the plaintiff's amended complaint stated a cause of action, and the defendant's pleadings were not legal defenses to the cause of action. The defendant then elected to stand on its motion to strike the amended complaint, on its amended answer, and on special affirmative defenses. Defendant then made a motion for judgment on the pleadings in its favor. This motion was denied. Defendant, failing to answer further, the trial court entered judgment in favor of the plaintiff in the sum

of $31,387 with interest at five per cent from April 15, 1948. The defendant-appellant has prosecuted this appeal.

The judgment was entered solely on the pleadings. The pleadings, for the purpose of this appeal, as a matter of law, are admitted to be true. Therefore it becomes necessary to analyze the pleadings to determine whether or not the judgment of the plaintiff is sustained by the admitted facts as disclosed by the pleadings.

The admitted facts are as follows: the defendant for many years prior to January 16, 1931, under a state charter, operated a banking business at Forreston, Illinois. On January 16, 1931, Collin L. Robertson was president of that bank. He had been president continuously for some years prior thereto. During the same time Herman Brandt had been cashier of the bank. Robertson had been active in the management of the bank, and had charge of the purchase and sale of its securities. He owned 171 shares of the bank's capital stock at a par value of $100 per share. He had purchased various bonds for the bank's investment account. It appears that these bonds had commenced to depreciate in value prior to August 1929, during which time and thereafter there was a world-wide depression. The bank was examined by the bank examiners under the supervision of the Auditor of Public Accounts of the State of Illinois on January 3, 1931. This examination disclosed that the bond account of the bank was carried on its books as having a value of $456,000. The examination disclosed that the bonds had depreciated in value so that their then market value was approximately $75,000 less than the value placed upon them by the bank. The Auditor of Public Accounts demanded that this depreciation be made good by the bank. It is apparent that if this deprecia-

584

tion had not been made good, the Auditor would have closed the bank. To make good this depreciation, Robertson signed a written memorandum, which is as follows:

"For the purpose of guaranteeing the creditors or depositors of the Forreston State Bank of Forreston Illinois against any loss in connection with and on account of Bond depreciation shown on issues as reflected in examination report of January 3rd, 1931. Should any loss be incurred, I hereby pledge assign and set over to Herman Brandt as Trustee for the sole purpose as herebefore set forth as follows:

"Two Thousand (2000) shares of Swift & Co. stock, numbered C24200 to C24219 inclusive.

"It is further agreed and understood that I have the right to substitute securities of any equal market value, at any time, should I so desire. Said securities to be held by said Trustee until such time as the Bond depreciation has appreciated to an amount sufficient to offset depreciation equal to the amount of this guarantee, or until such time as permission is given to the Trustee to surrender said guarantee to guarantor by the Auditor of Public Accounts.

"The above to be binding on my estate, heirs and assigns.

"Witness my hand and seal this 16th day of January, 1931.

Seal C. L. Robertson

"In presence of
C. F. Robertson

"I hereby certify that I have received and hold the above mentioned securities as Trustee for the purpose as hereinbefore set forth.

Herman Brandt
Trustee"

585

This memorandum is designated as Exhibit A and is attached to and made a part of the amended complaint. The shares of stock mentioned in the memorandum were manually delivered to Herman Brandt, named as trustee in the memorandum, but were not endorsed by Robertson.

On November 7, 1931 Robertson died testate in Ogle county, Illinois. Frank Wertz and Herman Brandt were appointed executors of his will. In the May term, 1933, of the county court of Ogle county, where the probate proceedings were pending, the executors filed a supplemental inventory. The shares of stock described in the written memorandum were listed by them as a contingent right, title, or interest of the decedent under an agreement of January 16, 1931.

On March 4, 1933 the Forreston State Bank closed, as did every bank in the country in accordance with the National Bank Moratorium. After this negotiations were carried on with the Auditor of Public Accounts to determine if the bank could be reopened. The bank was then hopelessly insolvent. Its insolvency was partly caused by the further depreciation in value of the bond account and of the two thousand shares of Swift & Company stock. The bond account of the bank had further depreciated since January 16, 1931 to $222,304. The Swift & Company stock had depreciated in value from about $75,000 to $31,387. It was also apparent that the value of the Swift & Company stock would further depreciate, if not sold.

On May 5, 1933 the liability of the bank to its depositors was $435,729.65. Deposits of the bank were made up of the usual savings accounts, time certificates which bore interest at 3% per annum, and regular deposits which bore no interest. A large percentage of the deposits bore interest.

After some negotiations with the Auditor concerning a reorganization plan, the depositors waived their claims against the bank to 75% of the amount of their deposits and accepted certificates from the bank waiving all interest claims. They further agreed that the waived portions of their deposits would be payable solely out of future net profits of the bank. The reorganization plan further provided that the two thousand shares of Swift & Company stock which were still in the hands of Brandt, as trustee, and still unendorsed, should be sold immediately and paid over to the bank. The Auditor approved the plan, the waiver of deposits was obtained, the Swift & Company stock was sold, and the proceeds credited to the bank's account. The bank was then permitted to reopen. There is nothing disclosed by the pleadings that during this reorganization period the estate of C. L. Robertson, deceased, claimed any right against the bank in connection with the sale of stock.

On April 15, 1948 the defendant bank made a final payment to depositors on the above mentioned certificates. The depositors by this last payment received all their money, but no interest.

In order to sell the Swift & Company stock, on May 4, 1933, the executors of the Robertson estate filed a petition with the memorandum of January 16, 1931 attached in the county court of Ogle county. This petition stated in substance that the value of the bonds in the bank bond account had depreciated more than $200,000 since January 16, 1931; that the defendant bank had demanded that Brandt as trustee sell the stock immediately and deliver the proceeds to the bank; and that Swift & Company had required the executors to obtain an order of court authorizing them to consent to the sale and transfer of the stock. On the same day the county court granted the prayer of the

petition and authorized the executors to endorse the stock and sell it. It was sold on the open market on May 28, 1933 for the sum of $31,387, which amount was received by the bank. The defendant bank advised the Auditor of Public Accounts of the sale. It was after this sale that the bank was permitted to reopen by the Auditor of Public Accounts.

In 1936 the executors of the Robertson estate filed their account with the county court. The account was approved, and Frank Wertz resigned as executor and Herman Brandt continued to act as sole executor. In November 1944, the county court approved the final report of Herman Brandt, final distribution was made, and Brandt was discharged.

As both parties to this lawsuit contend that the construction and interpretation of the written instrument dated January 16, 1931 authorizes recovery on their theories of the lawsuit, it is necessary that it be analyzed to determine its meaning. The plaintiff's theory of the lawsuit is that Exhibit A was an agreement to guarantee the depositors of the bank against the loss of their deposits and the fact that there was no loss to the depositors, first ascertained in 1948, will permit his recovery. He further contends along this same line that as the suit could not be maintained until 1948, the statute of limitations had not run.

The defendant contends that the agreement constituted a pledge of the stock; that the legal title of the stock until it was sold remained in Robertson with a lien of the bank against the stock for the sum of approximately $75,000; that the stock was to be held by Herman Brandt for the use of the bank to take care of the depreciation in its assets with the right of Robertson to substitute securities of equal market value. Defendant denies that Brandt was a trustee and claims that within a reasonable time after the date of the in-

588

strument Brandt on the request of the bank, when it appeared that the value of the bank's bond account had further depreciated, could sell the stock and its proceeds be given over to the bank. He denies that there was any trust involved but states that if there was a trust, the trust had been fully executed when the stock was sold and its proceeds received by the bank. He denies that the plaintiff at any time had any cause of action on the instrument or otherwise against the bank, but states if such cause of action did exist, the statute of limitations or laches would commence to run on May 28, 1933, precluding recovery now.

It is admitted by all parties that the agreement in many respects is ambiguous. There is a well-known rule of construction applied to written instruments to the effect that the court will endeavor to place itself in the position of the contracting parties and interpret the instrument in view of the circumstances surrounding it at the time it was made, considering the objects and purposes the parties had in mind, so that the court may understand the language used in the sense intended by the parties using it. (*Plast v. Metropolitan Trust Co.*, 401 Ill. 302.) It appears that on the date of the instrument in question the bank's bond account, as shown by the bank examiner, had depreciated approximately $75,000. The Auditor of Public Accounts had demanded that this depreciation be made good by the bank or the bank be closed. Robertson agreed to put up out of his own property to make up the depreciation two thousand shares of Swift and Company stock. At that time Robertson was president of the bank and owned 171 shares of its capital stock. If the bank was closed and its assets were insufficient to pay its depositors, he could have been liable for 100 per cent assessment on each share of his stock and might have lost the value of his stock or have

been otherwise liable to the depositors for the depreciation of the bond account; so there is no doubt that there was a valid consideration for Robertson's signing the memorandum. It is also apparent that the stock itself had to be available to the bank to make up the depreciation above mentioned, and that if required by the bank, it should be sold by Brandt to meet the very purpose for which it was made. The memorandum first recites that it is given "for the purpose of guaranteeing the creditors or depositors of the Forreston State Bank of Forreston, Illinois against any loss in connection with and on account of bond depreciation shown on issues as reflected in examination and report of January 3, 1931." It is our opinion that the word guarantee did not mean that Robertson was to guarantee the depositors against eventual loss but he was guaranteeing or assuring them that he was pledging the Swift & Company stock for the benefit of the bank so that the bank would have on hand the value of the stock to take the place of approximately $75,000 which deficit the bank examiner had found was caused by the depreciation of the bond account. The word "guarantee" may have several meanings. It is defined in Webster's New International Dictionary as:

"(a) An agreement by which one undertakes to make sure of the existence, continuance, or the like of (something);

"(b) Something given or possessed as security for the existence or continuance of (something);

"(c) Something given or had as a means of securing the existence, performance, or fulfillment of (something);

"(d) A security."

 The use of the word "guarantee" does not necessarily import a guaranty contract. (38 C. J. S., Sec. 2, p. 1131.) It is clear in view of the circumstances sur-

rounding the execution of this agreement that this part of it should be construed to mean that Robertson, in order to secure the depositors of the bank and to increase the value of the bond account by the amount of $75,000, pledged and delivered to Herman Brandt as trustee of the bank, the Swift & Company stock in question.

■ It is our view of the instrument that its purpose was to assure the creditors or depositors of the bank against any loss in connection with the further depreciation of the bond account of the bank; that the words in the agreement stating ''should any loss be incurred, I hereby pledge, assign, and set over to Herman Brandt, as trustee, for the sole purpose as herebefore set forth'' the shares of Swift and Company stock, was intended to mean should any loss be incurred due to further depreciation of the bond account, then the stock was to be sold and the proceeds delivered to the bank. It appears to us that this is a sensible and practical interpretation of the agreement and was what was intended by the parties. It is our opinion that the construction sought by the plaintiff that the loss incurred would not be determined until the bank regained its solvency is not sustained by the language of the instrument and that such construction does violence to the intention of the parties as disclosed by the other facts in this record. We believe this contention is without merit.

■ The agreement further provided that Robertson had the right at any time to substitute with Brandt for the benefit of the bank other securities of equal value of the stock. The agreement should further be construed to mean, under all the facts and circumstances surrounding its execution, if the bond account appreciated as much or more than the value of the securities pledged, then with the approval of the Audi-

tor of Public Accounts, the agreement was terminated and the Swift & Company stock was to be returned to Robertson. There is nothing contained in the agreement nor disclosed by the pleadings that Robertson was given any cause of action against the bank at any time for the value of the stock. The stock remained in Brandt's hands unendorsed until May 4, 1933. In the meantime apparently the bank had not requested Brandt to dispose of the stock although at the time of the bank moratorium in March 1933, the bond account of the bank had depreciated additionally in the sum of more than $200,000 and the pledged stock had diminished in value to about 50 per cent of its original value. It is admitted by all the parties that at the time of the sale the bank had the right to have the stock sold under the terms of the agreement. It is clear to us that the transaction under the written agreement was a pledge of the stock by Robertson for the benefit of the bank and that the legal title to the stock was in Robertson subject to the lien of the bank to convert it into cash when the value of the bond account of the bank had depreciated so that the proceeds from the sale of the stock were necessary to take care of the subsequent depreciation. It is apparent that the bank, Brandt, and the legal representatives of Robertson all understood that this time had arrived on May 4, 1933. When the stock was sold the rights of all the parties under the written memorandum ceased and if Robertson's representatives had any cause of action against the bank, it occurred on that date. The enforcement of this right is long since terminated by reason of the statute of limitations. There is nothing in the pleadings disclosing that at any time prior to 1950 Robertson or his legal representatives ever claimed or anyone claimed in their behalf that they had any cause of action against the bank arising out of the written

agreement. Accepting for the moment the argument of the plaintiff that the agreement was only a guarantee against any loss to the depositors, it is clear that the depositors had sustained a serious loss when the bank closed in 1933. They lost interest on their money and waived their deposits so that the bank might reopen. It appears to us that the agreement executed by Robertson amounted to a contribution of the value of the stock, or if not that, it is based upon a hope that the condition of the bank would improve and he would then get his stock back. This did not happen. The facts here are somewhat parallel to the facts in the *State Bank of Paw Paw v. Boyle*, 338 Ill. App. 355, decided by this court. Here it was held that voluntary contributions of the stockholders evidenced by notes to preserve the bank's solvency could not be recovered by the stockholders. In the instant case it was never contemplated by the parties as disclosed by the memorandum and other facts disclosed in the pleadings that Robertson intended only to guarantee the depositors against loss of their deposits. The purpose of the memorandum and the pledging of the stock was to improve the capital structure of the bank so that it might be kept open. The provision in the agreement that if "any loss should be incurred," meant a loss due to further depreciation of the bond account. That loss did arise. Brandt as trustee was authorized to sell the stock and turn it over to the bank. The pleadings confirm this interpretation of the agreement in question. The agreement became completely executed on May 28, 1933. On this date the stock was sold. There was no further liability to the plaintiff's representatives. There was no cause of action existing after that date and if there had been, it is barred by the Statute of Limitations. If there was a trust, which we do not think there was, the trust had been fully executed and performed by

May 28, 1933, and if there was a wrong committed on that date by the bank or the trustee, it had long since been barred by laches.

■ While in view of our opinion it is unimportant, nevertheless we think there is no merit to defendant's contention that the county court had no right to appoint Fred Kurth administrator *de bonis non* for the purpose of bringing the instant suit for recovery of the money. (*Starr v. Willoughby,* 218 Ill. 485.) Whether the claim be valid or not, the administrator *de bonis non* was rightfully appointed and his right to be appointed was legal and cannot be collaterally attacked. The circuit court was correct in affirming the action of the county court in that regard.

In view of our interpretation of the facts in the case, it is unnecessary to pass on the other errors assigned by the defendant.

For the above reasons it is our opinion that the trial court erred in entering judgment for the plaintiff, and that defendant's motion for judgment on the pleadings in its favor should have been allowed by the court. The judgment is reversed and remanded with directions directing the trial court to enter a judgment in favor of the defendant in bar of action.

*Judgment reversed and cause remanded with directions.*