HARDWARE WHOLESALERS, INC., Plaintiff-Appellant, *v.* RICHARD J. HEATH
*et al.*, Defendants-Appellees.

(No. 71-209;

Fifth District—February 28, 1973.

G. MORAN, J., dissenting.

Cox, Phillips & Weber, of Robinson, (Frank J. Weber, of counsel,) for appellant.

Robert L. Douglas, of Robinson, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals the dismissal of Count I of its complaint which sought a judgment against defendant Richard J. Heath on the basis of an alleged agreement of guaranty. Count II of the complaint was lodged against Crawford County Cash & Carry, Inc., successor to Reese Building & Industrial Supply, Inc. and is not involved in this appeal. The dismissing of Count I was in response to the motion of defendant Heath, was final, and contained the requisite finding provided in Supreme Court Rule 304. Ill. Rev. Stat., ch. 110A, sec. 304.

The essential allegations of Count I are that during the early part of 1963 Reese Building & Industrial Supply, Inc., now Crawford County Cash & Carry, Inc., and Richard J. Heath, individually, requested that plaintiff supply Reese with hardware, lumber and building materials on credit; that in consideration for the furnishing of such merchandise to

Reese on credit plaintiff required the assurance of some responsible person that the cost of said merchandise would be paid; that the defendant Heath, individually, as an inducement to the credit sales, undertook, agreed and promised to answer to plaintiff personally for the debts of Reese and that such undertaking was evidenced by a promise in writing addressed to the assistant secretary and treasurer of plaintiff. A copy of the memorandum was attached and incorporated in the complaint. Count I further alleged that in reliance upon the agreement of defendant Heath the plaintiff made credit sales to Reese, that there is now an outstanding balance which has not been paid despite demand made upon Reese, its successor, and Richard J. Heath, individually. Count I concludes with a prayer for a judgment against Heath individually.

The memorandum referred to in the complaint was in the form of a letter, typed on stationery with the imprinted letterhead: "L. S. Heath & Sons, Inc., America's Finest Candy Bar," and follows in its entirety:

"March 29, 1963

Mr. Welty Bauer
P.O. Box 868
Fort Wayne, Indiana

Dear Mr. Bauer:
In regard to our telephone conversation, I would like to give you a little background about the Reese Building and Industrial Supply, Inc. This Corporation was formed on February 15, 1963 with the principal stockholders being the Reeses who own 60% of the stock and Mr. W. J. Chamblin and myself owning 40%. Frank G. Reese, Jr., who is the President, ran this yard for Mr. D. L. Kirtland of Oblong, Illinois for five years and is very experienced in the lumber business.

I am the Treasurer of the Reese Company besides being the Vice President and Treasurer of L. S. Heath & Sons, Inc. I will personally guarantee the Reese Company and I believe the finest reference I could give you would be Mr. James Lentz, Vice President of the Indiana National Bank of Indianapolis. Mr. Art Lodge, President of the Second National Bank in Robinson, Illinois would be another. Dun and Bradstreet can be used also.

We will make a fine company for you and if there are any other questions, please feel free to contact me. I am sending a box of our Heath chips as my reference.

Very sincerely yours,
(signed) Richard J. Heath
Vice President-Treasurer"

In response to defendant's motion the court below dismissed Count I of the complaint on the grounds (1) that the letter was addressed to someone other than plaintiff, (2) the letter was not a direct promise to pay but a mere recommendation of the Reese company and (3) although in his letter Heath says he will personally guarantee the Reese company he does not say he will guarantee payment. The issue presented by this appeal is whether under the facts alleged defendant's liability is a question of law that may be determined by the court upon the pleadings alone or a question of fact for determination by a jury.

Plaintiff urges that the statement in the letter, "I will personally guarantee the Reese Company," indicates that something more than a mere recommendation was intended and that evidence should be admitted to clear up the ambiguity. Plaintiff also argues that evidence is admissible to show that the individual addressee received the letter, as was intended by Mr. Heath, in his capacity as an officer of the plaintiff company, and that although the letter from Heath is signed by defendant as Vice President and Treasurer of L. S. Heath & Sons evidence is nevertheless admissible to show that Heath signed the letter in his personal capacity. Defendant counters that the trial court was correct in its dismissal for the reasons it stated and in addition that since Heath signed the letter as Vice President-Treasurer on L. S. Heath & Sons, Inc. stationery it is demonstrated that Heath did not personally guarantee the debts of the Reese company but that if there was any guaranty of the debts of the Reese company it was that of L. S. Heath & Sons, Inc. In essence, then, the issue here turns on whether the alleged letter of guaranty is the complete integration of the understanding and agreement of the parties or, on the other hand, is ambiguous and susceptible of differing interpretations so as to require the admission of evidence in order to ascertain the true agreement of the parties. We think that to state the issue thus is to beg the conclusion that the letter is ambiguous and that the trial court was in error in dismissing Count I of plaintiff's complaint.

■■ At the outset note must be made that by filing a motion to dismiss defendant admitted as true the well pleaded facts of the complaint. We have for determination the question of whether or not as a matter of law Count I of the complaint states a cause of action. That question cannot be resolved in the mix of disputed questions of fact. To make that determination the facts must be assumed to be as they are alleged in the complaint. The position taken by defendant in his argument here is based on an assumption that the admittedly true facts alleged in the complaint do not obtain, that other facts must be recognized and the complaint be then found insufficient. Defendant's position is inconsistent

and his argument thus ineffectual. The necessary elements for plaintiff's cause of action are present in Count I, and with the admissions flowing from the motion to dismiss, it is sufficient.

■■ But notwithstanding the admissions of fact implicit in defendant's motion to dismiss, can it be said, as a matter of law, that the letter in question could never be shown to be in fact a letter of guaranty from defendant Heath individually? An affirmative answer, and affirmance for defendant, can be obtained only from an interpretation of the alleged letter of agreement. The rules of construction applicable to contracts generally apply to contracts of guaranty. (*Schreffler v. Nadelhoffer*, 133 Ill. 536, 25 N.E. 630; *United States Gypsum Co. v. Bernstein*, 169 Ill.App. 474; Restatement of the Law, Surety, sec. 88.) The rules governing construction of contracts have been stated many times and are typified in *Martindell v. Lake Shore Nat. Bank*, 15 Ill.2d 272, 154 N.E.2d 683:

> "The primary object of the construction of a contract is to give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to any particular words used in expression thereof. [Citations.] In general, the intention of the parties is to be determined from the final agreement executed by them, rather than from preliminary negotiations and agreements, [citation] but previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses. [Citations.] * * * extrinsic evidence is admissible to show the meaning of words used in a contract *where there is an ambiguity, or when the language is susceptible of more than one meaning.* [Citations.]" (Emphasis supplied.)

In a case involving construction of a contract of guaranty, the court in *Claude Southern Corp. v. Henry's Drive-In, Inc.*, 51 Ill.App.2d 289, 201 N.E.2d 127, has this to say:

> "* * * where * * * the express terms of the contracts are ambiguous, or there is a question regarding the intention of the parties, the rule of strict construction is not brought into play until the intention is determined from the declarations and conduct of the parties or from the surrounding circumstances. [Citations.] Letters of guaranty generally drawn by businessmen without the aid of legal counsel often lack the evidence of deliberation which characterize some of the forms of suretyship. Such commercial instruments should not be construed with a strict technical nicety but rather according to what is fairly to be presumed to have been the understanding of the parties."

When the letter in its entirety is considered in the light of the fore-

going we think it apparent that an ambiguity does exist and that the language used is easily susceptible of more than one meaning. Its first paragraph is solely concerned with an explanation of the Reese company and the composition of its stockholders and officers. The writer identifies himself as a stockholder. The second paragraph is devoted to the identity of the writer of the letter and certain references (presumably for financial responsibility). It is written in the first person. This paragraph contains the language "I will personally guarantee" followed by "the finest reference I could give you  *  *  *." If not conclusive on the matter this language is at the least capable of being interpreted to mean that the writer is personally guaranteeing the Reese company and then gives as his own personal references those persons and agencies enumerated in the letter. When thus viewed it cannot be said that the letter is a mere "reference" for the Reese company. When assigned its usual and customary meaning the word "guarantee" means something more than "reference." The final paragraph of the letter states that "we" will make a fine company for you, *etc.* Does this refer to the Heath Company or the Reese company? It is ambiguous in this regard. However, nowhere in the letter does the writer attempt to enhance the Heath company. If this were his objective then why dwell upon the Reese company in the letter?

■■   It should also be borne in mind that the "agreement" was prepared by Heath and any ambiguity must be resolved against him. (*City of Chicago v. Carpenter,* 95 Ill.App.2d 81, 238 N.E.2d 70.) And the fact that the alleged personal undertaking of defendant Heath is contained upon a corporate letterhead and is ostensibly signed by him as a corporate officer is not conclusive on the question of his personal undertaking. (*Inland Rubber Corp. v. Eskimo Kooler Corp.,* 337 Ill.App. 292, 85 N.E.2d 859, (published in abstract).) The corporate trappings surrounding the signature of the individual, in the setting here, constitute no more than evidence of the true intention of the writer of the letter. They are not controlling but only one factor to be considered.

■■   We think it plain from the text of the entire letter and in view of the particular elements we have noted that the letter is not conclusively a contract of guaranty on the one hand or a mere recommendation on the other. Its true nature may be determined only in the factual setting in which it was written. The factual setting can only be cast from the evidence bearing upon the matter. Accordingly the trial court was in error in granting defendant's motion to dismiss Count I of the complaint.

Reversed and remanded.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN dissenting:

In construing a written instrument, it should be read and considered as a whole. The intention of the parties is not to be gathered from detached portions of the contract or from any one clause or provision standing by itself, but each part of the instrument should be viewed in the light of the other parts. (*Martindell v. Lake Shore National Bank,* 15 Ill.2d 272.) One clause of the instrument may be modified or limited by another clause, and no word should be changed if, by considering the entire instrument, all parts of it may be interpreted to create one consistent plan. *Metcalfe v. First Nat. Bank of Pittsfield,* 312 Ill.App. 385.

The context in which an ambiguous word is used often determines its meaning. (*Saunders v. Fox,* 178 Ill.App. 309.) The use of the word "guarantee" does not necessarily import a guaranty contract. *Kurth v. Forreston State Bank,* 348 Ill.App. 581.

> "Frequently nuances of meaning of words in a contract are sharply revealed by their association with other words. The ancient maxim of 'noscitur a sociis' summarized the rule that the meaning of words may be indicated or controlled by those words with which they are associated. Words are known by the company they keep. * * * Where any particular word is obscure or of doubtful meaning when taken by itself, the obscurity or doubt may be removed by reference to associated words." 17A C.J.S. 149.

A careful examination of the letter in question discloses nothing to suggest that this writing constitutes a contract of guarantee. The word "guarantee" is present, but it is surrounded by language indicating that the letter was meant merely as an introduction, or recommendation, or reference. When the author of the letter in question wrote, "I will personally guarantee the Reese Company," he completed the meaning by continuing the rest of the sentence without even the interruption of a comma, "and I believe the finest reference I could give you would be Mr. James Lentz, Vice President of the Indiana National Bank of Indianapolis." In the completed sentence we have a completely unambiguous communication. Its author is emphasizing personal recommendation and supporting it with one obtainable from another apparently prestigious individual. There are not two separate, different thoughts or ideas in this sentence, which would necessarily be the case if plaintiff's contentions are accepted. Rather it is clear that defendant was repeating in the part of the sentence following the conjunctive "and" the same meaning that preceded it, that is a recommendation or source of reference. "The word 'and' in its common meaning expresses a relation, an addition, and whether used to connect words, phrases or sentences, it must be accepted

as binding together and as relating the one to the ·other." (*Hailey v. County Board of School Trustees,* 21 Ill.App.2d 105, 112.) This type of inference is customary, and I believe reasonable people under the circumstances would so understand and evaluate it. The·next two sentences in the paragraph further clarify the meaning of the sentence in question as one of recommendation or reference. They state that ·Art Lodge and Dun and Bradstreet are references in addition to the James Lentz mentioned in the previous sentence. Therefore, the consistency and single purpose of this paragraph is established as a recommendation. The first sentence indicates that he is an individual of substance and a person whose recommendation should have great weight. In the next three sentences he furnishes three other business references for consideration of the recipient of the letter.

Obviously, this letter could have but one meaning. It is a letter of reference. The first paragraph tells who the officers of the Reese Corporation are. The second contains references, and the last paragraph is another reference: "We will make a fine company for you and if there are any other questions, please feel free to contact me. I am sending a box of our Heath chips as my reference." The only possible ambiguity is a patent one—the use of the words "personally guarantee". However, when read in the context of the entire letter, the purpose of the writing is so overwhelmingly clear that any reasonable doubts are quickly dispelled and there is no ambiguity. One of the meanings of the word "guarantee" is "to vouch for". A reasonable person, and in particular a business person, would see only a letter of reference emerge from the present writing.

Plaintiff has, throughout the course of litigation, as evidence by his own complaint, contended that his case rests on a *written* contract guar-. antee. Since the writing which constitutes the alleged contract unambiguously presents itself, upon a common-sense examination, as a letter of reference, the order of the trial court dismissing the complaint as to Heath is correct and should be affirmed.