STATE BANK OF EAST MOLINE, Plaintiff-Appellant, *v.* GUS CIRIVELLO *et al.*, Defendants-Appellees.

Third District   No. 77-191

Opinion filed January 6, 1978.—Rehearing denied February 14, 1978.

BARRY, J., dissenting.

Donald B. Hilliker and Edward W. Malstrom, both of Isham, Lincoln & Beale, of Chicago, and Tom Lytton, of Lytton & Dalton, of East Moline, for appellant.

Wendel R. Swan and John W. Robertson, both of Bozeman, Neighbour, Patton & Noe, and Joseph R. Rosborough, both of Moline, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

State Bank of East Moline appeals from an order of the Circuit Court of Rock Island County in which the court found a guaranty signed by defendants to be void and unenforceable.

The action in the instant case was initiated by the plaintiff bank to enforce a guaranty agreement executed by defendants, who were 12 limited partners of Lakeview Estates Limited Partnership. The guaranty was asserted to be enforceable by plaintiff bank as a guarantee of payment of a loan of $65,000 by the bank to the partnership. Seven of the defendants defaulted and five defendants contested the action. As we have noted, following a bench trial, the trial court found the guaranty to be void and unenforceable on the theory that only 12 limited partners signed the guaranty and that the defendants had relied on plaintiff's representations that all 13 limited partners of the partnership would be required to sign the guaranty.

On appeal in this court, plaintiff bank argues that (1) the failure of all 13 limited partners to sign the guaranty does not make it void because plaintiff had no notice from defendants that execution by all 13 limited partners was a condition of defendants' undertakings, and (2) the trial court's determination that defendant relied on plaintiff's representation is contrary to law and against the manifest weight of the evidence.

Lakeview Estates Limited Partnership was a limited partnership having one general partner, Lakeview Estates of Iowa, Inc., and 13 limited partners, including the 11 defendants in this cause and one James Patten. In June of 1972, the partnership sought a loan of $65,000 from plaintiff bank, apparently for the purpose of finishing the pads for a mobile home park being developed by the partnership. The representatives of the partnership, for the purposes of the loan negotiations, were Moe Shamsie, president of Lakeview Estates of Iowa, Inc., and a limited partner of the partnership, and Durward Dirks and Archie Roets, also both limited partners of the partnership. During the discussions regarding the loan, Ben H. Ryan, Jr., president of plaintiff and plaintiff's representative in the loan negotiations, informed the partnership's representatives that plaintiff would make the loan to the partnership if all of the limited partners would personally guarantee repayment of the loan. On or about June 20, 1972, 12 limited partners (11 defendants in this action) signed an instrument entitled "Authority of Partnership to Open Deposit Account and to

Procure Loans." That instrument authorized Dirks, Shamsie and Roets to act as partnership representatives and to borrow money, incur liabilities, and execute promissory notes on behalf of the partnership in transactions with plaintiff bank. This authorization was not signed by limited partner James Patten, although a signature blank had been prepared for his name. The partnership authorization was acted upon as to the loan request even though Patten did not sign, where the other 12 parties did sign.

In July of 1972, and on or prior to July 13, 1972, Ben Ryan, the bank official, delivered to one or more of the partnerships representatives in the loan negotiations a printed guaranty form commonly used by plaintiff bank. At a meeting held on or about July 13, 1972, some of the limited partners met and signed the guaranty form which had been supplied by plaintiff. Each guaranty form contained eight signature blanks. Two guaranty forms were eventually signed, one containing nine signatures and one containing three signatures. At the meeting, the partners were told, by the partnership representatives, of the condition stated by the bank as to the guaranty, and were apparently advised by their colleagues that each limited partner was guaranteeing a portion (one-thirteenth) of the loan, and that all partners would sign the guaranty. While some of the defendants did not read the guaranty before signing, all defendants had an opportunity to read the guaranty before signing. Ben Ryan, the plaintiff bank's representative, did not attend the meeting among the partners.

The guaranty signed by defendants, provided in part:

"TO STATE BANK OF EAST MOLINE * * *

The undersigned hereby request you to give, and continue to give, LAKEVIEW-ESTATES-LIMITED PARTNERSHIP * * * from time to time, as you see fit, financial accommodations and credit, and * * * the undersigned hereby guarantee and promise and agree to make prompt payment to you, as they severally mature, * * * of all loans made, or which may be made by you to said borrower * * *.

If this guaranty be executed by more than one signer all of the obligations hereby created, and all agreements herein contained shall be the several obligations and agreements of each of the undersigned, but at your option any or all of the same may be enforced against any or all of the undersigned jointly."

The guaranty form also contained a provision permitting any signer to withdraw from the guaranty upon notice to the plaintiff bank.

The signed guaranty forms were subsequently delivered to plaintiff bank by one of the partnership representatives. On July 13, 1972, the bank president made a notation that the personal guarantees of the 12 partners signing were on file and that there was "one more to come."

On or about July 13, 1972, a 180-day note for $65,000, at 7% interest, was executed on behalf of the partnership, and the loan proceeds were disbursed to an escrow account to be drawn upon by the partnership. After two renewals, the loan remained unpaid. Plaintiff bank thereupon brought the instant action to recover the balance unpaid from the defendants as guarantors. After the filing of plaintiff's lawsuit, a payment was made on the loan, and $63,190.52 of principal remains due on the loan. Eleven limited partners, who signed the guaranty forms, were made defendants in the action.

As we have noted, following a bench trial with respect to the liability of the remaining 5 defendants (after 7 of the defendants had defaulted), the trial court found that the guaranty was void and unenforceable because only 12 partners signed the instrument and the defendants had relied on the bank representative Ryan's statement that all 13 limited partners would be required to guarantee the loan. In the order of the court of September 28, 1976, the trial court specifically found, that by a preponderance of the evidence:

> " * * * The agent of the plaintiff bank who was the sole representative of the said bank in the loan proceedings contested herein informed the defendants herein that all thirteen members of the partnership must sign the guaranty agreement before money would be loaned to the partnership.
> * * *
> * * * That the above-named defendants relied on the statements of the bank when they signed said guaranty contract that all partners would sign before a loan was made.
> * * * That the defendants herein believed themselves more secure and were encouraged in signing by having the signature of one James Patten to the guaranty contract and were induced to sign thereby; that defendants were at all times unaware that said Patten did not sign; that these defendants knew that Patten was a very successful and experienced businessman of considerable wealth."

■■■ On appeal, plaintiff first argues that the failure of all 13 limited partners to sign the guaranty does not make it void since plaintiff had no notice that the execution by all 13 limited partners was a condition of defendants' undertaking. The guaranty agreement itself, which plaintiff seeks to enforce, is an unconditional guaranty contract between plaintiff and each defendant. The resolution of plaintiff's argument and contention depends upon the interpretation of the contract and the evidence as presented in this cause. Rules of construction applicable to contracts generally apply to contracts of guaranty and the primary object of the construction of a contract is to give effect to the intention of the parties

(*Hardware Wholesalers, Inc. v. Heath* (5th Dist. 1973), 10 Ill. App. 3d 337, 341, 293 N.E.2d 721). It is clear, also, that the contract of guaranty can be conditional. (*West Madison State Bank v. Mudd* (1st Dist. 1928), 250 Ill. App. 258, 265; *Belleville Savings Bank v. Bornman* (1888), 124 Ill. 200, 16 N.E. 210.) As noted in the *Belleville Savings Bank* case, when a defendant writes his name as a guarantor, and imposes a condition to its acceptance by a bank, that another party should become a co-guarantor, and if the bank had actual notice, prior to its action, of that condition which the party had a right to impose, then that instrument is conditional and creates no liability until the condition was in fact performed by signature of the desired co-guarantor. If the obligee or bank has no notice of the condition, then it would not be a defense that the presumed guarantor signed it on the condition that it should be executed by another person or persons. Notice and knowledge of the condition by the bank or other loaning institution is essential under such conditions. *Comstock v. Gage* (1878), 91 Ill. 328, 335.

In the instant case, the record fails to show indication of any condition as to defendants' guaranties to the plaintiff bank. The guaranties were apparently delivered to plaintiff bank representative by the partnership representatives with no mention of any condition as to the effectiveness of the 12 guaranties. While Ryan, the president, did make a notation that the 12 guaranties were in and one was "to come," that notation, viewed in light of the closing of the loan without the signature of Patten and plaintiff's delivery of the money to the partnership, indicated a waiver by the bank of its requirement, and its reliance upon the 12 guarantors who did sign.

The record does disclose that defendant Dr. Cook, in a conversation initiated by President Ryan, explained to Ryan what the loan was for and when Ryan asked him whether the loan should be made, Cook said, "yes" it should be made, but he also stated in that conversation, held on June 30, 1972, approximately 2 weeks prior to the closing, that he Cook didn't want to be responsible for any more money than he had in the partnership at that time, "other than his partnership share." Ryan, at that time, told him that all partners would have to sign the guaranty. The guaranty forms were delivered to Ryan approximately 2 weeks following that conversation and no further conversation was had between Dr. Cook and Ryan as to any condition of any guaranty other than that of Dr. Cook's personal desire to be obligated only as to his "share" of the obligation.

■■ The trial court's finding that the guaranty was void and unenforceable, by reason of it being signed by only 12 of the limited partners, necessitated a finding, and evidence to support that finding, that plaintiff bank had knowledge of a condition imposed by the guarantors. Notably, the trial court made no finding with respect to plaintiff's

knowledge of any such condition, the evidence in the record does not support a finding that plaintiff bank had knowledge of any condition imposed as to the guarantees by defendants. As to Dr. Cook, however, Ryan had understood that Dr. Cook did not, by signing, want to be exposed to an obligation for more than his share of the total obligation. On the basis of the record, therefore, we must conclude that the trial court erred, as a matter of law, in entering judgment for defendants in this cause.

■■ ■ Plaintiff bank also argues that the trial court finding that defendants relied on Ryan's statement that all 13 limited partners would be required to sign the guaranty is contrary to law and against the manifest weight of the evidence. The trial court apparently reasoned that the doctrine of equitable estoppel prevented plaintiff from enforcing the guaranties after plaintiff had stated that all limited partners should be required to sign the guaranty. It is noted, however, as stated in *Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 524, 288 N.E.2d 97, that:

> "* * *one claiming the benefit of the principle [of equitable estoppel] must have relied upon the actions or representations of the other and must have no knowledge or convenient means of knowing the true facts."

In the instant case, the partnership representatives themselves delivered the guaranties to plaintiff with 12 signatures. The loan was made on the basis of such 12 guaranties. Plaintiff bank then proceeded to disperse the loan funds. While plaintiff had stated that all limited partners would be required to sign the guaranty, it clearly waived this requirement and made the loan on the basis of the 12 guaranties. Defendants, therefore, were acting through their agents and either knew or had convenient means to know how many partners actually signed the guaranty. It is clear that the doctrine of equitable estoppel does not apply in this case to prevent plaintiff from enforcing the guaranties of the defendants.

A closely related case on the facts is *Northwestern National Bank v. Foster* (1936), 196 Minn. 96, 264 N.W. 570, 573. In that case the Minnesota Supreme Court affirmed the trial court decision rejecting the defense that notice of a conditional guaranty could be gleaned from a condition relating to the loan. This is clearly the same defense that the trial court had accepted in the instant case. We believe that the Minnesota Supreme Court correctly applied the applicable doctrine that the defendants must establish that notice was given of their own condition, as to the guaranties, before such defense could be viable.

We agree that Dr. Cook may have executed the guaranty on the assumption that he would be required to pay only his share or one-thirteenth of the total obligation by reason of executing such guaranty. This condition, however, would not apply to any of the other defendants

who made no such representation to the bank as to their respective guaranties which were unconditional.

Plaintiff bank, apparently feeling secure with the 12 guaranties, made the loan involved in the instant case. Defendants clearly benefited from the making of the loan to the partnership and, in absence of a definite showing of a conditional delivery of their guaranties, defendants are obligated on such guaranties.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is reversed, and this cause is remanded with directions to the court to enter judgment herein for the plaintiff as against all other defendants than Dr. Cook for the full amount of the judgment, and with directions to enter judgment against Dr. Cook for one-thirteenth of the total amount of the obligation resulting from the making of the loan in this cause.

Reversed and remanded with directions.

SCOTT, J., concurs.

Mr. JUSTICE BARRY, dissenting:

I dissent from the majority opinion and believe that the judgment of the trial court should be affirmed. As the majority recites, a contract of guaranty can be conditional. (*Belleville Savings Bank v. Borman* (1888), 124 Ill. 200, 16 N.E. 210.) In order for the guaranty to be conditional all that is required is that the guarantor's signature be executed intending the condition and that the bank or obligee have actual notice, prior to any action on its part, of the condition. All of these requirements were met in the instant case. Relying on *Hardware Wholesalers, Inc. v. Heath* (5th Dist. 1973), 10 Ill. App. 3d 337, 293 N.E.2d 721, it is obvious that parol evidence may be resorted to in this cause to determine the intention of the parties and thereby construe the meaning of the guarantor language in the contract. The evidence is not disputed that the plaintiff bank required all 13 limited partners as guarantors to this loan transaction and so communicated this requirement to the partnership and all the partners.

It seems to me to be a meaningless task to require the guarantor to notify the plaintiff bank of the condition of the guaranty which was required by the plaintiff in the first place. It is undisputed that the bank intended, at least initially, for all 13 limited partners to be bound as guarantors of the loan and that plaintiff, therefore, had actual knowledge of this condition. The evidence in the record also readily supports a conclusion that the 12 defendants who signed as guarantors intended the condition to be operative when they executed the agreement.

The majority opinion would allow the plaintiff to unilaterally rescind

the operation of the condition of all 13 limited partners signing as guarantors, and thereby unilaterally changed the obligations of the contract contrary to the intention of the parties at the inception of their contract. The evidence of the parties' intention in entering into the contract is at odds with the result reached in the majority opinion and I, therefore, respectfully dissent.